## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

TATUM ROBERTSON, EVE BRENNAN, and
MARIN RHODES, individually and on behalf of
all those similarly situated,

     *Plaintiffs*,

*v*.

UNIVERSITY OF CENTRAL OKLAHOMA and
BOARD OF REGENTS FOR THE REGIONAL
UNIVERSITY SYSTEM OF OKLAHOMA,

     *Defendants*.

Civil Action No. CIV-22-836-HE

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

## INTRODUCTION

1.    Plaintiffs, female student-athletes at the University of Central Oklahoma ("UCO"), bring this class action lawsuit against UCO and the Board of Regents for the Regional University System of Oklahoma (together "Defendants") for discriminating against female varsity student-athletes at UCO on the basis of their sex in violation of Title IX of the Education Amendments of 1972 ("Title IX") by depriving them of treatment and benefits equal to those provided to male varsity student-athletes at UCO and by retaliating against them for complaining about sex discrimination at UCO and trying to enforce their rights under Title IX.

2.    This lawsuit seeks a declaration that UCO is and has been violating Title IX both by depriving its female varsity student-athletes of equal treatment and benefits and by retaliating against them for trying to assert their rights.

3.    This lawsuit also aims to require UCO to treat its female and male varsity student-athletes equally going forward.

4.      Finally, this lawsuit seeks to hold UCO accountable for retaliating against its female varsity student-athletes in violation of Title IX and prohibit it from doing so in the future.

## JURISDICTION AND VENUE

5.      This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, and the regulations and policies promulgated pursuant to that law.

6.      This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

7.      Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 to obtain the correct interpretation of the legal requirements described in this Complaint, which is necessary and appropriate to determine the parties' respective rights and duties.

8.      Venue is proper in the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(b) because UCO is located in Edmond, Oklahoma, which is within this Court's jurisdiction. In addition, the events giving rise to the Complaint occurred in Edmond, Oklahoma, within this Court's jurisdiction.

## THE PARTIES

### *Plaintiffs*

9.      Plaintiffs are female varsity student-athletes at UCO who participate in the women's varsity indoor track and field team, outdoor track and field team, and/or cross country team (collectively, the "track and field team").

10.     Plaintiffs and all female varsity student-athletes at UCO are being deprived of treatment and benefits equal to those provided to male varsity student-athletes at UCO.

2

11.     UCO retaliated against Plaintiffs for complaining about UCO's sex discrimination against them and other female varsity student-athletes by firing their head coach, and UCO's retaliatory actions had a chilling effect on the willingness of other female varsity student-athletes to challenge, expose, and remedy UCO's sex discrimination.

12.     Each of the Plaintiffs was also injured because she was subjected by UCO to discrimination on the basis of her sex.

Plaintiff Tatum Robertson

13.     Tatum Robertson is currently a senior at UCO majoring in Kinesiology. She is a resident of Oklahoma.

14.     Ms. Robertson is a member of the women's varsity track and field team at UCO who competes as a thrower.

15.     Ms. Robertson learned the sport at a young age and loves participating in the sport because it gives her a sense of purpose and pride. She has been in the top 25 in the conference for two years.

16.     Ms. Robertson was harmed by UCO's failure to provide its female varsity student-athletes with treatment and benefits equal to those provided to male varsity student-athletes at UCO.

17.     Ms. Robertson was also harmed because UCO retaliated against her and the other Plaintiffs for trying to enforce their and others' rights to equal treatment and benefits under Title IX by firing the head coach of the women's varsity track and field team.

Plaintiff Eve Brennan

18.     Eve Brennan is currently a junior at UCO majoring in Kinesiology. She is a resident of Oklahoma.

3

19.     Ms. Brennan is a member of the women's varsity track and field team at UCO who competes as a thrower.

20.     Ms. Brennan grew up around track and field and developed an early love for the sport. She is dedicated to competing in the sport she loves.

21.     Ms. Brennan was harmed by UCO's failure to provide its female student-athletes with treatment and benefits equal to those provided to male student-athletes at UCO.

22.     Ms. Brennan was also harmed because UCO retaliated against her and the other Plaintiffs for trying to enforce their and others' rights to equal treatment and benefits under Title IX by firing the head coach of the women's varsity track and field team.

<u>Plaintiff Marin Rhodes</u>

23.     Marin Rhodes is currently a junior at UCO majoring in Actuarial Science. She is a resident of Oklahoma.

24.     Ms. Rhodes is a member of the women's varsity track and field team at UCO who competes as a long-distance runner.

25.     Ms. Rhodes has been running since the eighth grade and loves cross country. She enjoys the team aspect of the sport and has an appreciation for the hard work, dedication, and stamina it requires.

26.     Ms. Rhodes was harmed by UCO's failure to provide its female student-athletes with treatment and benefits equal to those provided to male student-athletes at UCO.

27.     Ms. Rhodes was also harmed because UCO retaliated against her and the other Plaintiffs for trying to enforce their and others' rights to equal treatment and benefits by firing the head coach of the women's varsity track and field team.

*Defendants*

28.     Defendant University of Central Oklahoma is a constituent institution of the Oklahoma Regional University System.

29.     Defendant University of Central Oklahoma is a recipient of federal funds and is required to comply with Title IX and all its implementing regulations.

30.     Defendant Board of Regents for the Regional University System of Oklahoma is a public entity located in Oklahoma City, Oklahoma, that does business in Edmond, Oklahoma, by operating the campus of UCO.

31.      Defendant Board of Regents for the Regional University System of Oklahoma is a recipient of federal funds and is required to comply with Title IX and all its implementing regulations.

32.     Under Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681 *et. seq.* and the regulations adopted pursuant to 34 C.F.R. Part 106, the University of Central Oklahoma and the Board of Regents for the Regional University System of Oklahoma must provide equal opportunities to women and men in every program UCO offers, including equal treatment and benefits to UCO's female and male varsity student-athletes, and cannot retaliate against any female student-athlete for speaking out against sex discrimination at UCO or attempting to enforce her or others' rights under Title IX.

## FACTUAL ALLEGATIONS

## TITLE IX BARS UCO FROM DISCRIMINATING AGAINST ITS FEMALE STUDENT-ATHLETES ON THE BASIS OF THEIR SEX.

33.     Title IX provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

34.    Because UCO receives federal financial assistance, its varsity athletic program is subject to Title IX, and UCO must comply with Title IX's requirements. 20 U.S.C. § 1687.

35.    Violations of Title IX's requirements constitute intentional sex discrimination.

36.    In the statute, Congress expressly delegated authority to the United States Department of Health, Education and Welfare ("HEW") to promulgate regulations interpreting Title IX. 20 U.S.C. §1682. In 1975, HEW promulgated these regulations at 45 C.F.R. Part 86. The United States Department of Education ("DOE") later adopted these regulations and codified them at 34 C.F.R. Part 106 (collectively, the "Regulations"). These regulations are enforced by the Office for Civil Rights ("OCR") within DOE.

37.    In 1979, OCR issued a policy interpretation of Title IX and the Regulations as applied to intercollegiate athletics at 44 Fed. Reg. 71,413 (Dec. 11, 1979) (the "OCR Policy Interpretation").

38.    The OCR Policy Interpretation sets forth three areas of compliance under Title IX as it relates to college sports: (1) effective accommodation of student interests and abilities; (2) equal athletic financial assistance; and (3) equal treatment and benefits for female and male athletes.

39.    The area applicable to UCO's varsity intercollegiate athletics programs at issue in this case is equal treatment and benefits for female and male athletes.

40.    In addition, Title IX prohibits UCO from retaliating against women who speak out against sex discrimination. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005); *see also* 34 C.F.R. § 106.71.

6

**Title IX's Equal Athletic Treatment and Benefit Requirements**

41.     Compliance with Title IX's equal athletic treatment and benefits mandate is assessed under the factors set forth in  34 C.F.R. § 106.41(c) and requires UCO to provide "equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c)

42.     The Regulations identify ten non-exclusive areas, commonly known as the "laundry list" in which recipients must provide equal athletic opportunity. These areas include:

- Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes;
- The provision of equipment and supplies;
- Scheduling of games and practice time;
- Travel and per diem allowance;
- Opportunity to receive coaching and academic tutoring;
- Assignment and compensation of coaches and tutors;
- Provision of locker rooms, practice and competitive facilities;
- Provision of medical and training services;
- Provision of housing and dining facilities and services; and
- Publicity.

34 C.F.R. § 106.41(c).

43.     Schools are also assessed in this category based on the support provided for recruiting and other support services for athletes. 44 Fed. Reg. at 71,413 at 71,415-71,417 (1979).

44.     "Equal efforts to recruit male and female athletes are required under Title IX." *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1110–11 (S.D. Cal. 2012) (citing Policy Interpretation, 44 Fed. Reg. at 71,417).

45.     "Although recruiting is not listed as a factor under 34 C.F.R. section 106.41(c), the Policy Interpretations do identify this area as significant." *Barrett v. W. Chester Univ. of Pennsylvania of State Sys. of Higher Educ.*, No. CIV.A. 03-CV-4978, 2003 WL 22803477, at

7

*6 (E.D. Pa. Nov. 12, 2003) (citing *Cohen v. Brown Univ.*, 809 F. Supp. 978, 997 (D.R.I. 1992) (identifying recruiting dollars as a "target area" under the Policy considerations and finding a disparity in Brown University's allocation of those funds)).

46.     The items listed above are not exhaustive and do not include every area in which a school must provide equal treatment and benefits to its female and male student-athletes. Instead, the list provides a good overview of the areas to be examined.

47.     In addition, a school's "failure to provide necessary funds for teams for one sex" may also be indicative of sex discrimination. 34 C.F.R. § 106.41(c).

48.     The OCR Policy Interpretation states, among other things, OCR's interpretation of the equal treatment and benefits provisions quoted above:

> The Policy—The Department will assess compliance with both the recruitment and the general athletic program requirements of the regulation by comparing the availability, quality and kinds of benefits, opportunities, and treatment afforded members of both sexes. Institutions will be in compliance if the compared program components are equivalent, that is, equal or equal in effect. Under this standard, identical benefits, opportunities, or treatment are not required, provided the overall effect of any differences is negligible.

44 Fed. Reg. 71,415.

### Title IX's Prohibition Against Retaliation

49.     Title IX's prohibition on retaliation was recognized and emphasized by the U.S. Supreme Court in *Jackson*, 544 U.S. at 178: "[T]he text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex.'" *See also* 34 C.F.R. § 106.71 ("No recipient or other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX[.]").

50.     As the Supreme Court explained, such retaliation "is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination." *Jackson*, 544 U.S. at 174.

51.     The Court said it would be "difficult, if not impossible" to achieve Title IX's goal of protecting citizens from discriminatory practices "if persons who complain about sex discrimination did not have effective protection against retaliation." *Id*. at 180–81 (noting that, without protection against retaliation, "individuals who witness discrimination would likely not report it . . . and the underlying discrimination would go unremedied").

52.     "Reporting incidents of discrimination is integral to Title IX enforcement, and would be discouraged if retaliation against those who report went unpunished." *Id*. at 180.

53.     Relying on *Jackson*, the Tenth Circuit has explained that Title IX "prohibits retaliation against individuals because they have complained of sex discrimination." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017).

54.     "Individuals should be commended when they raise concerns about compliance with the Federal civil rights laws, not punished for doing so." OCR, U.S. DOE, *Dear Colleague Letter* at 1 (April 24, 2013).

55.     For all these reasons, OCR has explained that "once a student . . . complains formally or informally to a school about a potential civil rights violation . . ., the recipient [school] is prohibited from retaliating (including intimidating, threatening, coercing, or in any way discriminating against the individual) because of the individual's complaint." *Id.*

## UCO HAS BEEN AND IS DISCRIMINATING AGAINST ITS FEMALE STUDENT-ATHLETES ON THE BASIS OF THEIR SEX.

56.     UCO is a member of the NCAA, and it participates in Division II athletics.

57.     For the past several decades, UCO has sponsored women's and men's varsity Division II intercollegiate athletic teams that are segregated based on sex.

58.     UCO sponsors men's baseball, basketball, football, golf, and wrestling and women's basketball, cross country, golf, rowing, soccer, softball, tennis, indoor track and field, outdoor track and field, and volleyball. Each of these teams is segregated based on sex.

59.     UCO has violated and is violating Title IX's equal treatment and benefits requirements and Title IX's prohibition against retaliation in its actions towards the members of the women's teams.

**UCO's Violations of Title IX's Equal Athletic Treatment and Benefits Requirements**

60.     UCO does not offer equal athletic treatment and benefits to its female student-athletes in the areas set forth in the regulations and, accordingly, intentionally discriminates against its female varsity student-athletes in violation of Title IX.

61.     UCO is depriving female student-athletes of equal benefits and treatment in almost every area set forth in 34 C.F.R. § 106.41(4). For example, at UCO:

- The selection of sports and levels of competition do not effectively accommodate the interest and abilities of female student-athletes;

- Female student-athletes are provided inferior equipment and supplies, as compared to male student-athletes;

- Female student-athletes are not treated as well as male student-athletes in the scheduling of games and practice times;

- Female student-athletes are provided with inferior means of travel than male student-athletes , including by not having access to the same charter bus services;

- Female student-athletes are provided with fewer coaches and support personnel than male student-athletes;

- Female student-athletes are provided with inferior locker rooms, practice facilities, and competitive facilities than male student-athletes;

- Female student-athletes are provided with inferior medical and training services than male-student-athletes;

- Female student-athletes and their teams are provided less publicity and public recognition than male student-athletes and their teams; and

- Female student-athletes and their teams are provided less formal recognition for achievements than male student-athletes and their teams.

62.     In the 2020-21 academic year, UCO's men's team were made up of 213 male student-athletes. Men's varsity football had 108 male student-athletes on the team and men's varsity wrestling had 39 male student-athletes on the team. These two teams made up approximately 69% of the men's athletic program at UCO.[1]

63.     In the 2020-21 academic year, UCO's women's teams were made up of 186 female student-athletes. The women's cross country, indoor track and field, and outdoor track and field teams had 66 female student-athletes on the teams. These three teams made up approximately 35% of women's athletic program at UCO.

---

[1] These participation numbers were submitted to the U.S. Department of Education and verified as accurate by UCO pursuant to the Equity in Athletic Disclosure Act ("EADA"). See 34 C.F.R. § 668.47. They are posted online for public review at https://ope.ed.gov/athletics/#/. The most current UCO information available there is for the 2020-21 academic year.

64.     The male student-athletes on the men's football and wrestling teams—or 69% of the male student-athletes—are treated much better than the female student-athletes on any of the women's teams at UCO.

65.     As a result, the male student-athletes in UCO's varsity athletic program, as a whole, are treated far better than the female student-athletes in UCO's varsity athletic program.

66.     In addition, UCO treats the female student-athletes on the women's varsity cross country, indoor track and field, and outdoor track and field teams—or 35% of the female student-athletes—much worse than the male student-athletes on any of its men's teams.

67.     No male student-athletes at UCO are treated as poorly as or deprived of benefits like the female student-athletes on the women's varsity cross country, indoor track and field, and outdoor track and field teams.

68.     For this reason, too, male student-athletes in UCO's varsity athletic program, as a whole, are treated far better than the female student-athletes in UCO's varsity athletic program.

*Accommodation of interests and abilities*

69.     UCO is not equally accommodating the interests and abilities of its female and male student-athletes.

70.     According to the EADA data that UCO submitted to the U.S. Department of Education and verified as accurate, UCO had an undergraduate population in 2020-21 of 3,418 men and 5,778 women; its undergraduate enrollment was 62.83% women.

71.     According to the same data, the school's varsity athletic teams had 213 men and 186 women, or 46.62% women—creating a 16.21% gap between the women's undergraduate enrollment rate and their varsity athletic participation rate.

72.     For its female varsity athletic participation rate to match its female undergraduate enrollment rate, UCO would need to add approximately 174 women to its varsity athletic program.

73.     UCO would not have to add these athletic opportunities for women to its program if it was already offering all of the varsity athletic opportunities for women for which interest, ability, and competition exist, but it is not.

74.     For example, UCO has the interest, ability, and competition available to field a women's varsity STUNT team, but it has not done so.

*Provision of equipment and supplies*

75.     UCO does not equally provide equipment and supplies to its female and male varsity student-athletes.

76.     UCO provides more and better equipment and supplies to its male student-athletes than it provides to its female student-athletes.

77.     For example, the female student-athletes on the track and field team do not receive new, matching apparel every year.

78.     The men on the football and wrestling teams receive new matching apparel each year.

79.     The female student-athletes on the women's track and field team are not even provided with enough uniforms for everyone on the team. As a result, these female student-athletes must wear mismatched top and bottom uniforms, or apparel from prior years.

80.     No male student-athletes on men's teams are required to wear mismatched uniforms.

81.     The female student-athletes on the women's track and field team are also provided with different colors and styles of shoes, with some women receiving sweatpants and sweatshirts that were left over from past years, and are never given matching travel apparel.

82.     In contrast, male student-athletes—like those on the men's football and men's basketball teams—are provided with matching travel apparel, new matching sweats, joggers, shoes, leggings, and sweatshirts each year.

83.     Female student-athletes are not provided with the equipment necessary to excel in their sports.

84.     For example, UCO does not provide mats or pole vault poles to the women pole vaulters. Those female student-athletes are required to borrow pole vault poles. Additionally, the female throwers on the track and field team are not provided with a collegiate throwing cage with proper netting around the throwing ring they use for practices, so they cannot safely practice certain collegiate event throws.

85.     No male student-athletes on men's teams are denied necessary sports equipment or supplies for their practices or competitions.

*Scheduling of games and practice times*

86.     UCO does not provide its female student-athletes with equal scheduling of games and practice times.

87.     For example, in the fall of 2021, the UCO women's cross country team was scheduled to host only one home competition, but it had to be cancelled because the university failed to secure a site for the home competition. In contrast, the university always has sites for

its men's teams' competitions and has not had to cancel a men's team's home competition due to lack of competitive facilities.

88.    UCO does not provide female student-athletes with equal access to the weight room used by all varsity student-athletes.

89.    Female student-athletes at UCO are forced to use the weight room at undesirable times.

90.    The men's football and men's wrestling teams are granted priority access to scheduling times for weight training. Men on those teams are often able to push out female-student-athletes from their time in the weight room—even if the women's team scheduled the time in advance.

91.    For example, the women's track and field team members had weightlifting training scheduled in spring 2022, but they were required to reschedule it because the men's wrestling team members wanted to use the female student-athletes' lifting time.

92.    In the 2022-23 academic year, UCO failed to file a Declaration of Season with the NCAA for the women's indoor track and field and outdoor track and field teams, which resulted in these female student-athletes being delayed in starting their practice in the fall semester for more than  two weeks.

93.    No men's teams were delayed in beginning their practice in the fall of 2022.

*Travel and per diem allowance*

94.    UCO does not provide its female student-athletes with travel benefits and per diem allowances equal to those it provides its male student-athletes.

95.     UCO arranges for the male student-athletes on men's teams to travel by charter buses driven by professional drivers to away competitions (competitions not held at UCO) and does not provide that same benefit to the women's teams.

96.     As an example, UCO does not provide the women's varsity track and field team members with charter buses to competitions. (They have no home competitions.) They are required to ride to their competitions in large vans, which are driven by their coaches rather than professional drivers.

97.     The men's football and wrestling team members are not required to have their coaches drive large vans to away competitions.

98.     This results in the female student-athletes and their coaches being less rested and ready for competition than the male-student-athletes.

99.     UCO often pays for the men's teams to leave campus the day before a competition and stay in a hotel the night before a competition; UCO does not provide that same benefit to the women's teams.

100.    For example, the female student-athletes on the women's track and field team are required to leave campus very early in the morning of a competition and are rarely allowed to stay in hotels, which leaves them tired for competition and severely limits the amount of time they have to warmup before competing.

101.    UCO almost always pays to have the male student-athletes on the men's football and wrestling teams leave for competitions the night before and stay in a hotel so that they are well rested for competition the next day.

*Opportunity to receive coaching and academic tutoring*

102.   UCO does not provide its female student-athletes with equal opportunities to receive coaching.

103.   UCO provides the male student-athletes on men's teams, particularly the men's football team, with multiple coaches and event/position specific coaches. In comparison, the female student-athletes on women's teams have fewer coaches, with higher student-to-coach ratios and less specialized instruction.

104.   For example, UCO's 2022-23 men's football team has eight coaches and four graduate assistant coaches for the team of approximately 100 men, but the approximately 65 member women's cross country, indoor track and field, and outdoor track and field teams has only two coaches, even though different events require extremely different specialized coaching.

*Assignment and compensation of coaches and tutors*

105.   UCO does not provide its female student-athletes with equal compensation of coaches.

106.   UCO compensates the head coaches of its women's teams significantly less than the head coaches of its men's teams.

107.   The information summarized in the chart below was submitted and verified as accurate by UCO to the federal government under the EADA:

| Year | Men's Teams Avg. Annual Salary per Head Coach | Women's Teams Avg. Annual Salary per Head Coach |
|---|---|---|
| 2010 | $69,264 | $39,712 |
| 2011 | $71,951 | $45,062 |
| 2012 | $74,624 | $44,228 |
| 2013 | $74,624 | $42,291 |
| 2014 | $74,624 | $43,881 |
| 2015 | $74,769 | $47,017 |
| 2016 | $78,700 | $47,591 |
| 2017 | $79,400 | $55,102 |
| 2018 | $81,300 | $55,324 |
| 2019 | $81,750 | $59,653 |
| 2020 | $81,200 | $59,080 |

108.   While some fluctuation in compensation is to be expected between sports, on average, UCO pays the head coaches of its women's teams significantly less than it pays the head coaches of its men's teams, and it has done so for many years.[2]

109.   The same is true of the assistant coaches of men's and women's teams at UCO, according to the information UCO submitted and verified as accurate under the EADA:

| Year | Men's Teams Avg. Annual Salary per Assistant Coach | Women's Teams Avg. Annual Salary per Assistant Coach |
|---|---|---|
| 2010 | $22,647 | $6,428 |
| 2011 | $39,482 | $22,318 |
| 2012 | $51,089 | $20,805 |
| 2013 | $48,621 | $26,920 |
| 2014 | $51,558 | $24,175 |
| 2015 | $48,624 | $26,212 |
| 2016 | $48,625 | $29,649 |
| 2017 | $40,302 | $26,514 |
| 2018 | $39,620 | $30,894 |
| 2019 | $39,786 | $34,333 |
| 2020 | $38,822 | $35,000 |

[2] UCO only reports average salaries of all its coaches combined through EADA.

18

110.    This unequal compensation hinders UCO's ability to attract and retain high-quality coaching staffs for its women's teams, which, in turn, negatively affects the instruction and training female-student-athletes are provided.

111.    In short, this unequal compensation also ensures that female student-athletes will not receive coaching as valuable as the male student-athletes receive.

112.    The women's track and field team is also being deprived of a throwing coach for the 2022-23 academic year, despite having a graduate assistant coach lined up for the job in April 2022, while men's teams like the football team have multiple assistant coaches for specialized positions and several graduate assistant coaches.

*Provision of locker rooms, practice, and competitive facilities*

113.    UCO provides its female student-athletes with locker rooms, practice facilities, and competitive facilities far inferior to those it provides to its male student-athletes—and it does not provide locker rooms, appropriate practice facilities, or any competitive facilities to over one-third of the female student-athletes at all.

114.    UCO provides all of its men's varsity teams (with the possible exception of men's golf)  with a private locker room, each of which was built or remodeled within the last three or four years.

115.    In contrast, several women's teams are not provided with private locker rooms. And the women's locker rooms—when provided—are not as nice or recently renovated as the locker rooms provided to men.

116.    For example, the women's cross country, indoor track and field, and outdoor track and field teams do not have their own locker room.

117.    UCO only offered the female student-athletes on these three teams the use of a locker room that is also used for visiting teams of other sports and referees.

118.    In contrast, the men's football and wrestling teams have top-of-the-line locker room facilities that include individual locker cubbies with backlit personalized name plates for every male student-athlete on the teams, a kitchen, vending-type machines that provide free snacks and sports drinks to the student-athletes, and high-quality, abundant seating options. See the pictures below:



*1. Picture of UCO men's football locker room*



*2. Picture of UCO men's football locker room.*

119.   No women's team has a locker room with this level of amenities and, as noted, the women's varsity track and field teams members do not have their own locker room at all.

120.   UCO does not provide the female student-athletes on the women's indoor track and field and outdoor track and field teams with any designated practice area on campus. Instead, these female student-athletes are required to practice at a local middle school during the outdoor season and some must practice at a separate high school, away from the others. No male student-athletes are required to practice at off-campus middle school facilities.

121.   UCO provides all of its male student-athletes with designated, intercollegiate level practice areas on campus, except for the golf team members, who practice at a local country club.

122.   The middle school where these female student-athletes have to practice does not supply intercollegiate level facilities that are necessary to the success of a varsity college team. For example, the track contains only six lanes, while outdoor collegiate tracks contain at least eight lanes—an NCAA requirement for competition.

21

123.   The women's track and field student-athletes must lock up their equipment in a small chest at the middle school, so it is not stolen or broken by other people. No men's team has to do that.

124.   The women's track and field teams do not have lights at its practice facility, making practice early in the morning and after sunset unsafe for those student-athletes, while the men's practice fields all have lights that allow those facilities to be used at all hours.

125.   A few weeks prior to the end of the women's outdoor track and field team's championship season, the middle school removes the net around the throwing ring, which makes it unsafe to practice certain events, like the hammer throw. No male student-athletes face similar problems at their practice facilities.

126.   The women's indoor and outdoor track and field student-athletes were not able to practice high jumping or pole vaulting at the local middle school for most of the year in 2021-22 because pits were not available there for those events. No male student-athletes are denied such basic necessities.

127.   As a result of the lack of facilities to practice high jumping, the women track and field student-athletes were not allowed to compete in high jumping during 2020-21. No men's team suffered such competitive consequences because of UCO's unwillingness to provide even minimally adequate training and practice facilities.

128.   The women's indoor track and field team practices in a small area in the upper deck of the basketball practice gym in the Hamilton Field House, which the women sometimes have to clean up after basketball games and other public events before they can start practice— and they have to accommodate the men's basketball team by holding "quiet" practices when the men's basketball team is practicing.

129.    Additionally, during the indoor track and field season, the throwers on the women's track and field team have to practice throwing weight throws outside—in the cold—because they are not permitted to perform weight throws inside, where they do not have a designated safe space to practice.

130.    These female student-athletes practice throwing off of a driveway behind the Sport Performance Center, and their practices are often interrupted by vehicles driving through the practice area. No male student-athlete endures this kind of treatment.

131.    Furthermore, the area where these female student-athletes perform weight throws is next to the indoor baseball/softball hitting facility, and the throwers on the women's indoor track and field and outdoor track and field teams have to pause their practices for the men's baseball team to walk through their practice area to get to their indoor hitting facility. This reality is emblematic of the priority male student-athletes are given at UCO, even to interrupt ongoing women's practices.

132.    UCO provides all of its men's teams other than the golf team with designated competitive facilities on campus.

133.    For example, the men's football team has a newly renovated competitive facility that will even include a waterfall feature in the end zone.

134.    UCO does not offer every women's team other than the golf team with competitive facilities on campus.

135.    For example, UCO does not provide its women's indoor track and field team or outdoor track and field team with *any* designated competitive facility on campus.

136.    Without a competitive facility, the female track and field team is never able to host a track and field meet and must travel for every competition. No men's team must travel for every competition.

137.    No women's team's competitive facility is state-of-the-art or anywhere near as nice as the competitive facility UCO provides to the men's football team.

138.    The closest college level indoor and outdoor tracks are approximately forty-five minutes from the UCO campus. The women's indoor track and field and outdoor track and field teams are usually required to travel to Missouri or Kansas for their competitions, while all men's teams have a mix of competitions at UCO and away.

*Provision of medical and training services*

139.    UCO does not provide its female student-athletes with medical and training services equal to those it provides its male student-athletes.

140.    For example, the female student-athletes on the women's cross country, indoor track and field, and outdoor track and field teams at UCO have not been provided with an athletic trainer at almost any of their competitions or practices. No men's team suffers this lack of training services.

141.    Indeed, the male student-athletes on men's teams are provided with athletic trainers during practices and during both home and away competitions. Women do not receive this benefit equally.

142.    Instead of providing an athletic trainer at every practice and competition to the female student-athletes on the women's track and field team, UCO provides them with a bag that is labeled "med. bag" and contains athletic tape and other supplies. No men's team has

its training services limited to a "med. bag" that the student-athletes or coaches administer themselves.

### *Publicity*

143.    UCO does not provide its female student-athletes and male student-athletes with equal publicity.

144.    UCO provides more and better publicity for the male student-athletes on its men's football, wrestling, and basketball teams than it provides for the female student-athletes on any of its women's teams.

145.    UCO posts more regularly on the athletic department's official social media accounts about the men's football, wrestling, basketball, and baseball teams than any women's team.

146.    For example, UCO posts on the athletic department's social media accounts every time the male student-athletes on the men's football and wrestling teams are competing, but does not post when the female student-athletes on the women's cross country, indoor track and field, and outdoor track and field teams are competing.

147.    UCO provides the male student-athletes on its men's teams with professional photographers and a media day to take preseason pictures. Female student-athletes do not receive this benefit. Indeed, the women on UCO's cross country, indoor track and field, and outdoor track and field teams are not provided with professional photographers and are not provided a media day to take preseason pictures.

### *Recruiting*

148.    UCO does not provide its female student-athletes with equal funding and opportunities for recruiting.

149.   The coaches of UCO's women's varsity teams have been given much smaller recruiting budgets than the coaches of UCO's men's varsity teams, resulting in UCO spending far more on male student-athletes for recruiting.

150.   The information summarized in the chart was submitted and verified as accurate by UCO to the federal government under the EADA.

| Year | Men's Team Recruiting Expenses | Women's Team Recruiting Expenses | % of Recruiting Expenses for Women's Teams | Men's Athletic Participation | Women's Athletic Participation | % of Women Student Athletes | Recruiting Dollars per Male Student | Recruiting Dollars per Female Student |
|---|---|---|---|---|---|---|---|---|
| 2010 | $44,774 | $13,562 | 23.25% | 200 | 232 | 53.70% | $223.87 | $58.46 |
| 2011 | $18,512 | $9,155 | 33.09% | 233 | 210 | 47.40% | $79.45 | $43.60 |
| 2012 | $62,717 | $14,894 | 19.19% | 208 | 238 | 53.36% | $301.52 | $62.58 |
| 2013 | $54,001 | $19,542 | 26.57% | 201 | 219 | 52.14% | $268.66 | $89.23 |
| 2014 | $62,308 | $23,655 | 27.52% | 199 | 241 | 54.77% | $313.11 | $98.15 |
| 2015 | $65,577 | $19,527 | 22.94% | 216 | 217 | 50.12% | $303.60 | $89.99 |
| 2016 | $39,348 | $15,994 | 28.90% | 234 | 207 | 46.94% | $168.15 | $77.27 |
| 2017 | $55,562 | $21,705 | 28.09% | 232 | 191 | 45.15% | $239.49 | $113.64 |
| 2018 | $47,932 | $19,829 | 29.26% | 216 | 190 | 46.80% | $221.91 | $104.36 |
| 2019 | $25,074 | $15,281 | 37.87% | 213 | 186 | 46.62% | $117.72 | $82.16 |
| 2020 | $21,490 | $5,178 | 19.42% | 213 | 186 | 46.62% | $100.89 | $27.84 |

151.   In 2020-21, the 157 individual female student-athletes equaled 42.55% of UCO's total student-athletes. But UCO spent only 19.42% of its recruiting expenditures recruiting female student-athletes.

152.   On average, UCO spent only $32.98 to recruit each female student-athlete versus the $101.37 it spent to recruit each male student-athlete.

### UCO's Violation of Title IX's Prohibition Against Retaliation

153.   Over the past several years, Martha Brennan, the director/head coach of the women's varsity cross country, indoor track and field, and outdoor track and field teams, repeatedly informed UCO about the numerous ways in which it was depriving those team

members and its other female-student athletes of the equal treatment and benefits required by Title IX, but UCO and athletic administration did almost nothing to address the ongoing gender discrimination.

154.   On February 9, 2022, members of the women's cross country, indoor track and field, and outdoor track and field teams met with UCO Athletic Director Stan Wagnon and UCO Director of Compliance Sheridan Leake , told them about how UCO was depriving them and their teammates of equal treatment and opportunities, and asked them to correct this inferior treatment.

155.   In response, AD Wagnon shared with the women their teams' history. He said their teams had been dropped by UCO in 2000, added back in 2010 to comply with Title IX when they "weren't really wanted," and that was how they had been treated ever since.

156.   AD Wagnon admitted that their teams were not treated as well as the men's teams.

157.   AD Wagnon told the female student-athletes he would bring in someone to assess the program in April 2022, develop a plan to fix the problems, and get back to them by mid-May.

158.   By mid-May, the female student-athletes had not heard back from AD Wagnon, Director of Compliance Leake, or anyone else about their concerns or how they would be addressed.

159.   On May 16, 2022, Plaintiffs' counsel emailed a letter to UCO President Patti Neuhold-Ravikumar detailing UCO's discrimination against its female student-athletes, in particular the female student-athletes on the cross country, indoor track and field and outdoor track and field teams; saying they had been retained by female student-athletes on the

women's indoor track & field, outdoor track & field, and cross country teams to pursue a class action against the UCO, if necessary, for depriving all of its female student-athletes and potential athletes of equal treatment and participation opportunities in violation of Title IX of the Education Amendments of 1972; and asking UCO to meet and agree to comply with Title IX without the need for litigation.

160.    On May 19, 2022, UCO General Counsel Kendall Parrish responded to the May 16 letter, stating that UCO had begun the process of investigating the claims and that it would take up to thirty days to have sufficient information to provide a detailed response to the letter.

161.    On June 14, 2022, UCO emailed Plaintiffs' counsel a letter asserting that UCO was not violating Title IX. The letter contained several false factual assertions about UCO's treatment of its female student-athletes.

162.    Just three days later, on June 17, 2022, UCO retaliated against the female student-athletes by firing Martha Brennan, the director/head coach of the women's cross country, indoor track and field, and outdoor track and field teams—leaving the female student-athletes without a head coach and their teams in disarray.

163.    On June 21, 2022, AD Wagnon held a Zoom meeting with the women's cross country, indoor track and field, and outdoor track and field teams, in which Plaintiffs were told that their head coach was terminated because students had voiced their concerns regarding the numerous ways in which UCO was depriving them and their teammates of equal treatment and opportunities. Senior Associate Athletic Director Jeremy Rogers and Assistant Athletic Director Melissa Paul also participated in the Zoom call.

164.    During the June 21 Zoom meeting, the female student-athletes were also encouraged to transfer schools. Senior Associate AD Rogers told the women that, although

the automatic one-time transfer exception deadline had passed, given the circumstances, he would be open to "a conversation should you want to pursue other options for you in your collegiate career based on what's happened here."

165.   In the June 21 Zoom meeting, AD Wagnon, Senior Associate AD Rogers, and Assistant AD Paul did not say anything about how the opportunities, treatment, or benefits provided to the women's cross country, indoor track and field, and outdoor track and field teams would be improved. Instead, they focused almost exclusively on the decision to terminate and replace the head coach and the opportunity for the female student-athletes to transfer schools.

166.   UCO knew that its retaliatory conduct, including terminating a coach, would have a chilling effect on the rest of the women's track and field team members and the other female student-athletes at UCO, all of whom would be deterred from pursuing their rights under Title IX and from working with Plaintiffs to challenge, expose, and remedy UCO's sex discrimination. That is precisely the effect it had.

167.   As a result of UCO's termination of their coach, Plaintiffs were adversely affected, disturbed, upset, and harmed in their ability to pursue Title IX claims on behalf of themselves and the other female student-athletes at UCO.

168.   Because UCO terminated the director/head coach of the track and field team after Plaintiffs raised their concerns about UCO's Title IX violations, other female student-athletes on the women's track and field team and female-student-athletes throughout UCO's varsity athletic program were and are wary of pursuing and helping support Title IX claims against UCO, including by joining as named Plaintiffs or otherwise participating or assisting in this case.

169.   In August 2022, UCO hired a male coach to replace Martha Brennan as head coach of women's indoor track and field, outdoor track and field, and cross country.

170.   At the start of the 2022-23 academic year, UCO did not to file the necessary paperwork with the NCAA to allow the female student-athletes on the indoor track and field team to start practice at the beginning of the school year when they would have normally started practicing.

171.   The female student-athletes complained about the delay to their season, but UCO still waited an additional four days before filing the necessary paperwork causing further delay to the female student-athletes' ability to start practicing with their team.

172.   The women's track and field team, the team that had complained about and threatened to sue UCO for gender discrimination in violation of Title IX, was the only team for which UCO failed to file the necessary compliance paperwork so it could begin practice.

173.   UCO also failed to follow through with bringing onboard a throwing coach for the women, despite a coach being lined up in April 2022.

174.   Plaintiffs, the other members of the women's varsity track and field team, and all of the other female student-athletes at UCO, on behalf of whom Plaintiffs told UCO they would bring this class action, were adversely affected by UCO's retaliatory actions. The discriminatory impact of UCO's retaliation, moreover, will increase as knowledge of it spreads, and all of the current UCO female varsity student-athletes whose claims are at issue in this case are in the zone of interest protected by Title IX. *See A. B. v. Hawaii State Dep't of Educ.*, No. 20-15570, 2022 WL 996575, at *11 (9th Cir. Apr. 4, 2022).

175.   UCO's failure to take action to ameliorate or minimize the harm done by its retaliatory actions has made things worse.

## CLASS ALLEGATIONS

176. Plaintiffs bring this action on behalf of themselves and a class all those similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

177. Plaintiffs seek to represent a class for declaratory and injunctive relief under Rule 23(b)(2) of all current and future female varsity student-athletes at UCO.

178. For UCO's retaliation, Plaintiffs seek to represent the same class for compensatory and nominal damages under Rule 23(b)(3).

179. Each of the named Plaintiffs is a member of the proposed class and has been or will be injured by Defendants' sex discrimination in UCO's varsity athletic program.

180. ***Numerosity***. The proposed class meets the "numerosity" requirement of Federal Rule of Civil Procedure 23(a)(1) because there have been and will be more than 150 female student-athletes at UCO in and since the 2020-21 academic year and joinder is impracticable.

181. The proposed class also meets those requirements because joinder of all class members and all persons harmed by Defendants' ongoing sex discrimination in UCO's varsity intercollegiate athletic program is not just impracticable, but impossible.

182. The proposed class is known to exist, but the members of the class will change during this litigation because of the nature of college enrollment and athletic participation. Students at UCO generally aim to graduate four years after they matriculate. Athletes are generally eligible to participate in their sport for only four years, according to the rules of the NCAA. Accordingly, the members of the class harmed by Defendants' discrimination will change as each outgoing class of students graduates and another incoming class of students enrolls at UCO.

183.    The exact number of female varsity student-athletes who have been, are being, and will be harmed by Defendants' conduct, while numerous, is unknown, making joinder impracticable for that reason, too.

184.    Joinder is impracticable because the class includes unknown and unidentifiable future students who will enroll and/or become female varsity student-athletes at UCO during this litigation.

185.    ***Commonality and Predominance***. Plaintiffs satisfy the "commonality" requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) because there are questions of law and fact in common to the proposed class that predominate over any questions affecting only individual members, making a class action superior to other available methods for fairly and efficiently adjudicating the controversy. These questions include whether Defendants have violated and are violating Title IX (a) by depriving female varsity student-athletes at UCO of equal benefits and treatment and, if so, what remedies they are entitled to as a result; and (b) by retaliating against female varsity student-athletes at UCO and, if so, what remedies they are entitled to as a result.

186.    Because Title IX requires comparison of the sex-segregated men's and women's athletic programs, the Title IX issues in this action are inherently class-based.

187.    ***Typicality***. Plaintiffs satisfy the "typicality" requirement of Federal Rule of Civil Procedure 23(a)(3) because their claims are typical of those of the proposed class. Plaintiffs are all being denied equal treatment and benefits and have been retaliated against in violation of Title IX. The same is true of all proposed class members.

188.    Plaintiffs all want to end UCO's continuing violation of Title IX and to recover appropriate remedies for themselves and the proposed class members.

189.    In addition, Plaintiffs, like all members of the proposed class, have been, are being, or will be harmed by the ongoing sex discrimination in UCO's varsity athletics program.

190.    *Adequacy*. Plaintiffs are members of the proposed class and will fairly and adequately represent the interests of the class pursuant to Federal Rules of Civil Procedure 23(a)(4). They have no conflicts with the interests of the proposed class members, intend to prosecute this action vigorously to secure fair and adequate relief for the entire class, and have retained counsel with significant experience and success prosecuting Title IX class actions against universities.

191.    *Rule 23(b)(2) Certification: Defendants' Common Conduct*. Plaintiffs satisfy the requirement for certification of their claims for declaratory and equitable relief under Rule 23(b)(2) in that Defendants are acting or refusing to act on grounds that apply generally to the class—by denying them equal treatment and benefits and by retaliating against them when they raise concerns about the school's sex discrimination—so that final injunctive relief and declaratory relief are appropriate respecting the class as a whole.

192.    *Rule 23(b)(3) Certification: Superiority*. Plaintiffs satisfy the requirement for certification of their claims for damages under Rule 23(b)(3) because class certification would be superior to other available methods for the fair and efficient adjudication of this controversy. Here, it would be impractical and economically infeasible for class members to seek redress individually. Proof and resolution of their claims require class-wide evidence and findings. No other litigation concerning this controversy has already begun by other class members and litigation of these claims in this forum is desirable.

33

193.    Undersigned counsel have devoted substantial time to identifying and investigating the potential claims in this action, have developed detailed knowledge of the facts and the applicable law, and have sufficient resources to commit to representing this putative class as interim counsel under Federal Rule of Civil Procedure 23(g)(3) until such time as this Court determines whether to certify the action as a class action.

## Count I

### Title IX: Unequal Treatment and Benefits

194.    Plaintiffs re-allege and incorporate here by reference each and every allegation in the paragraphs above.

195.    Plaintiffs bring this claim as a class action as set forth under the Class Allegations and on behalf of the class defined above.

196.    Defendants provide UCO's varsity student-athletes with certain treatment and benefits, including but not limited to, equipment, supplies, uniforms, locker rooms, scheduling for competitions, transportation and accommodations for travel, coaching, practice and competition facilities, medical and training services, publicity services, recruiting, and other services.

197.    Under Title IX and 34 C.F.R. §106.41(c), Defendants must provide equal treatment and benefits to its female and male student-athletes. On a program-wide basis, UCO must provide female student-athletes with treatment and benefits that are equal to those that it provides to male student-athletes.

198.    Defendants do not provide female student-athletes and male student-athletes with equal treatment and benefits. Instead, UCO provides significantly better treatment and

substantially more benefits to male student-athletes. This constitutes sex discrimination in violation of Title IX.

199.    UCO has not sufficiently allocated equal treatment and benefits (or the resources and budgets necessary to provide equal treatment and benefits) to its female student-athletes.

200.    Defendants fail to provide UCO's female student-athletes with equal treatment and benefits in some or all of the categories set forth in the Regulations and the Policy Interpretation, including but not limited to:

- The provision of equipment, uniforms, and supplies;
- Scheduling of games and practice time;
- Travel, transportation, and per diem allowance;
- Opportunity to receive coaching and academic tutoring;
- Assignment and compensation of coaches and tutors;
- Provision of locker rooms, practice and competitive facilities;
- Provision of medical and training services;
- Publicity & sports information services;
- Recruiting resources and support; and
- Resources necessary to provide any of the foregoing benefits or to provide the female athletes with a genuine Division II athletic experience.

201.    Plaintiffs and all class members are harmed by Defendants' failure to provide UCO's female student-athletes with equal treatment and benefits. Such harm includes lost educational opportunities, lost competitive advantage, lower quality participation opportunities, and being subjected to sex discrimination. Accordingly, Plaintiffs are entitled to the relief requested herein.

## COUNT II

### Title IX Retaliation

202.    Plaintiffs re-allege and incorporate here by reference each and every allegation in the paragraphs above.

35

203.   Title IX and its implementing regulations prohibit retaliation for complaints of sex discrimination. *See* 20 U.S.C. §1681; 34 C.F.R. § 106.71; *Jackson*, 544 U.S. at 174, 178, 183. Such retaliation includes "intimidat[ing], threaten[ing], coerc[ing], or discriminat[ing] against any individual for the purpose of interfering with any right or privilege secured by title IX." 34 C.F.R. § 106.71.

204.   On multiple occasions, Plaintiffs engaged in protected activity by meeting with UCO's AD to discuss the numerous ways in which UCO was depriving them and their teammates of equal treatment and opportunities.

205.   On June 17, 2022, UCO unlawfully retaliated against Plaintiffs, their teammates, and the other prospective class members, by terminating the head coach of the women's track and field team because Plaintiffs spoke out about the sex discrimination they faced as female student-athletes at UCO and threatened to file a class action against the school on behalf of all of its female student-athletes for violating Title IX.

206.   In September 2022, UCO unlawfully retaliated against Plaintiffs, and the prospective class members, by delaying the start of their varsity practices.

207.   UCO subjected Plaintiffs to this retaliation because they engaged in protected activity by reporting sex discrimination, including intentional deprivation of equal treatment and benefits.

208.   As a result of UCO's retaliation, Plaintiffs and the prospective class have suffered and continue to suffer harm, including, but not limited to, anger, upset, frustration, interference with their ability to pursue and vindicate their rights under Title IX, and being subjected to sex discrimination.

209.   Plaintiffs and others similarly situated are entitled to relief including declaratory relief, injunctive relief, compensatory and nominal damages, and their reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.   Certify a class for declaratory and injunctive relief under Rule 23(b)(2) of all current and future female varsity student-athletes at UCO;

B.   Certify a class for compensatory and nominal damages under Rule 23(b)(3) of all current and future female varsity student-athletes at UCO;

C.   Appoint Plaintiffs as class representatives;

D.   Appoint Plaintiffs' counsel as class counsel;

E.   Enter an order declaring that UCO has discriminated and is discriminating against its female varsity student-athletes on the basis of their sex in the provision of treatment and benefits and by its illegal retaliation in violation of Title IX and the Regulations promulgated thereunder;

F.   Issue permanent injunctions barring UCO from discriminating against its female student-athletes on the basis of their sex by (a) denying them equal treatment and benefits in UCO's varsity intercollegiate athletics program and (b) retaliating against them for speaking about and challenging UCO's sex discrimination in violation of Title IX;

G.   Award compensatory and nominal damages, as appropriate, to Plaintiffs and all members of the class for UCO's retaliatory actions;

H.   Maintain jurisdiction over this action to monitor Defendants' compliance with this Court's orders;

I.      Award Plaintiffs their reasonable attorneys' fees and expenses; and

J.      Order such other and further relief as the Court deems appropriate.

Dated: September 20, 2022

Respectfully submitted,

__/s/ Arthur H. Bryant_____
Arthur H. Bryant (to be admitted *pro hac vice*)
**BAILEY & GLASSER, LLP**
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel.: (510) 272-8000
E-mail: abryant@baileyglasser.com

Lori Bullock (to be admitted *pro hac vice*)
**BAILEY & GLASSER, LLP**
309 E. 5th Street, Suite 202B
Des Moines, IA 50309
Tel.: 515.416.9051
E-mail: lbullock@baileyglasser.com

Joshua I. Hammack (to be admitted *pro hac vice*)
**BAILEY & GLASSER, LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
E-mail: jhammack@baileyglasser.com

**FRASIER, FRASIER & HICKMAN, LLP**

***/s/Frank W Frasier***
Frank W Frasier, OBA #17864
Maureen M. Johnson, OBA #21750
1700 Southwest Blvd.
Tulsa, OK 74107
Phone: (918) 584-4724
Fax: (918) 583-5637
E-mail: ffrasier@frasierlaw.com
E-mail: mjohnson@frasierlaw.com
Attorneys for Plaintiffs