**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TATUM ROBERTSON and EVE BRENNAN, individually and on behalf of all those similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF CENTRAL OKLAHOMA and BOARD OF REGENTS FOR THE REGIONAL UNIVERSITY OF OKLAHOMA,<br><br><br>Defendants. | Case No. 22-cv-836-HE<br><br><br>**BRIEF IN SUPPORT OF JOINT MOTION FOR**<br>**(1) CLASS CERTIFICATION;**<br>**(2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**<br>**(3) APPROVAL OF PROPOSED CLASS NOTICE; AND**<br>**(4) SCHEDULING OF FAIRNESS HEARING** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... iii

I.      INTRODUCTION. ................................................................................ 1

II.     STATEMENT OF FACTS. ................................................................. 1

A.   Background Facts. ............................................................................. 1

B.   Settlement Negotiations and the Proposed Settlement Agreement. ....................................... 2

III.    CLASS DEFINITION AND CLASS NATURE OF THE CLAIMS. ............................... 4

IV.    ARGUMENT. .................................................................................... 6

A.   The Proposed Class Satisfies the Requirements of Rule 23(a)(1)–(4). ................................... 7

   1.     The proposed class is numerous, and joinder of all class members is impracticable. .... 7

      *a)*    *Class Size.* ............................................................................. 8

      *b)*    *Prospective and Future Female Students.* ............................................. 8

      *c)*    *Geographic dispersal.* .................................................................. 10

B.   Common questions of law and fact apply to the class. ...................................................... 10

C.   The class representatives' claims are typical of those of the class. ....................................... 12

D.   The named Plaintiffs and their counsel are adequate representatives. .................................... 12

   1.     Class Representatives .................................................................... 12

i

2.     Class Counsel..................................................................................... 13

E.   The Proposed Class Satisfies Rule 23(b)(2)............................................... 14

V.     ENTRY OF AN ORDER APPROVING THE PARTIES' CLASS SETTLEMENT IS
NECESSARY AND APPROPRIATE....................................................................... 16

A.   The Settlement Agreement is Fair, Reasonable and Adequate. ........................... 17

1.     The Settlement Agreement was Fairly and Honestly Negotiated................................ 18

2.     Serious Questions of Law and Fact. ................................................ 19

3.     The Value of Immediate Recovery Outweighs the Possibility of Future Relief after
Long and Expensive Litigation. ............................................................. 20

4.     Plaintiffs, Defendants, and Their Counsel Believe the Proposed Settlement Agreement
is Fair, Reasonable, and Adequate. ............................................................. 21

B.   The Court Should Approve the Parties' Proposed Form and Method of Notice of Hearing
Regarding the Proposed Class Action Settlement. ....................................... 21

VI.    CONCLUSION......................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ...................................................................................... 7

*Atkins v. Toan*,
595 F. Supp. 104 (W.D. Mo. 1984) .............................................................. 10

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) .............................................................................. 15

*Barnes v. The American Tobacco Company*,
161 F.3d 127 (3d Cir. 1998) .......................................................................... 15

*Biediger v. Quinnipiac Univ.*,
928 F. Supp. 2d 414 (D. Conn. 2013) ............................................................ 5

*Black v. Occidental Petroleum Corp.*,
69 F.4th 1161 (10th Cir. 2023) ....................................................................... 7

*Boucher v. Syracuse Univ.*,
164 F.3d 113 (2nd Cir. 1999) .......................................................................... 5

*Bucha v. Ill. High School Ass'n*,
351 F. Supp. 69 (N.D. Ill. 1982) ..................................................................... 6

*Cannon v. University of Chicago*,
441 U.S. 677 (1979) ...................................................................................... 16

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ........................................................................................ 17

*Cherokee Nation of Oklahoma v. United States*,
199 F.R.D. 357 (E.D. Okla. 2001) .................................................................. 7

*Childs v. Unified Life Ins. Co.*,
No. 10-CV-23-PJC, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011) .................... 16, 17, 18, 20, 21

*Cmtys. for Equity v. Mich. High School Athletic Ass'n*,
192 F.RD. 568 (W.D. Mich. 1999) ............................................................. 5, 9

*Cohen v. Brown v. Univ.*,
991 F.2d 888 (1st Cir. 1993) ....................................................................... 5, 20

*Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*,
765 F.3d 1205 (10th Cir. 2014) ................................................................. 8

*Davis v. J.P. Morgan Chase & Co.*,
775 F. Supp. 2d 601 (W.D.N.Y. 2011) ...................................................... 17

*DG ex rel. Stricklin v. Devaughn*,
594 F.3d 1188 (10th Cir. 2010) ............................................................... 12

*Doe v. Charleston Area Med. Ctr., Inc.*,
529 F.2d 638 (4th Cir. 1975) ..................................................................... 9

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................................... 6

*Favia v. Ind. Univ. of Pa.*,
7 F.3d 332 (3rd Cir. 1993) ......................................................................... 5

*Foltz v. Del. St. Univ.*,
269 F.R.D. 419 (D. Del. 2010) ................................................................... 5

*Fortelney v. Liberty Life Assurance Company of Boston*,
No. CIV-09-12056-F, 2012 WL 13088605 (W.D. Okla. Sept. 27, 2012) ......... 8, 10, 11

*Gay v. Waiters' and Dairy Lunchmen's Union*,
549 F.2d 1330 (9th Cir. 1977) ................................................................. 16

*Gen. Telephone Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ................................................................................... 6

*Gomez v. Ill. State Bd. of Ed.*,
117 F.R.D. 394 (N.D. Ill. 1987) ................................................................. 9

*Haffer v. Temple Univ.*,
678 F. Supp. 517 (E.D. Pa. 1987) ............................................................. 5

*Harris v. Chevron U.S.A., Inc.*,
No. CIV-15-0094-PRW, 2019 WL 5846917 (W.D. Okla. July 29, 2019) ......... 17, 18

*In re General Motors Corporation "Piston Slap" Products Liability Litigation*,
No. MDL 04-1600, 2006 WL 1049259 (W.D. Okla. April 19, 2006) ................. 6

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
997 F.3d 1077 (10th Cir. 2021) ............................................................... 17

*Jane B. v. New York City Dept. of Soc. Servs.*,
117 F.R.D. 64 (S.D. N.Y. 1987) .............................................. 10

*Kelley v. Bd. of Trustees*,
35 F.3d 265 (7th Cir. 1994) .............................................. 20

*Leffel v. Wis. Inter-scholastic Athletic Ass'n*,
444 F. Supp. 1117 (E.D. Wis. 1978).............................................. 6

*Lucas v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006) .............................................. 19

*McKnight v. Linn Operating, Inc.*,
No. CIV-10-30-R, 2016 WL 756541 (W.D. Okla. Feb. 25, 2016)..................................... 7, 10, 12

*McNeely v. Nat'l Mobile Health Care, LLC*,
No. CIV07-933-M, 2008 U.S. Dist. LEXIS 86741 (W.D. Okla. Oct. 27, 2008)......................... 19

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
No. CIV-11-0634-HE, 2017 WL 187542 (W.D. Okla. Jan. 17, 2017)......................... 6

*Paton v. N.M. Highlands Univ.*,
275 F.3d 1274 (10th Cir. 2002) .............................................. 5

*Peterson v. Oklahoma City Housing Authority*,
545 F.2d 1270 (10th Cir. 1976) .............................................. 7

*Phillips v. Joint Legislative Comm. on Performance*,
637 F.2d 1014 (5th Cir. 1981) .............................................. 9

*Portz v. St. Cloud St. Univ.*,
297 F. Supp. 3d 929 (D. Minn. 2018).............................................. 5

*Ridgeway v. Mont. High School Ass'n*,
633 F. Supp. 1564 (D. Mont. 1986).............................................. 5

*Robinson v. Metro-North Commuter R.R. Co.*,
267 F.3d 147 (2d Cir. 2011).............................................. 14

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) .............................................. 12

*Santiago v. City of Philadelphia*,
72 F.R.D. 619 (E.D. Pa. 1976).............................................. 10

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
749 F.2d 1451 (10th Cir. 1984) ................................................................. 16

*Shook v. El Paso County*,
386 F.3d 963 (10th Cir. 2004) ..................................................................... 6

*Skinner v. Uphoff*,
209 F.R.D. 484 (D. Wyo. 2002) .................................................................. 8

*Tabor v. Hilti, Inc.,*
703 F.3d 1206 (10th Cir. 2013) ............................................................. 6, 10

*Trevizo v. Adams,*
455 F.3d 1155 (10th Cir. 2006) ................................................................... 7

*Trujillo v. Colo.*,
649 F.2d 823 (10th Cir. 1981) ................................................................... 16

*Wal-Mart Stores v. Dukes*,
564 U.S. 338 (2001) ................................................................................... 11

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ................................................................... 15

*Weaver v. Regan*,
701 F. Supp. 717 (W.D. Mo. 1988) ............................................................. 9

*Wilkerson v. Martin Marietta Corp.*,
17 F.R.D. 273 (D. Colo. 1997). ................................................................. 18

**Statutes**
20 U.S.C. § 1681 ........................................................................................... 1

**Rules**
Fed. R. Civ. P. 23 .......................................... 6, 7, 11, 12, 14, 15, 16, 19, 21

**Treatises**
7A Wright & Miller §1776 .......................................................................... 14

*Conte, 1 Newberg on Class Actions* 3d 4.11 ............................................. 15

## I.      INTRODUCTION.

Plaintiffs Tatum Robertson and Eve Brennan ("Plaintiffs") were female students and varsity athletes at Defendant University of Central Oklahoma. On September 20, 2022, they filed suit against the University of Central Oklahoma and the Board of Regents for the Regional University of Oklahoma (collectively, "UCO"), individually and on behalf of a class of similarly situated persons, to enforce their rights under Title IX of the Educational Amendments of 1972 (20 U.S.C. § 1681 *et. Seq.*) ("Title IX").

Plaintiffs allege that UCO's varsity athletic programs are not in compliance with Title IX. UCO has agreed to take steps which the Parties agree will constitute compliance with the aspects of Title IX at issue in this case. To this end, Plaintiffs and UCO (collectively the "Parties") have agreed to class certification to enable the Court to approve a remedy for both the named Plaintiffs and proposed class.

Plaintiffs allege that UCO violates Title IX by: (1) failing to provide female student-athletes with the same or comparable benefits, opportunities, and treatment provided to male student-athletes; and (2) retaliating against Plaintiffs for bringing Title IX complaints. UCO denies the allegations and that any Title IX violation or discrimination has occurred. Plaintiffs filed this action primarily to obtain injunctive relief related to UCO's athletics program, making this case appropriate for class certification under Rule 23(b)(2). Accordingly, the Parties seek to craft a remedy to provide relief to all persons who have been or will be affected by UCO's alleged violations of federal at issue in this present action.

## II.     STATEMENT OF FACTS.

### A.   Background Facts.

On February 9, 2022, members of the women's indoor track & field team, outdoor track & field team, and cross country team (collectively, the women's track & field teams) met with UCO

Athletic Director Stan Wagnon and raised issues regarding their teams' treatment as compared to the men's varsity teams at UCO. On May 16, 2022, Plaintiffs' counsel notified UCO that the women would initiate litigation unless the Parties were able to come to a resolution without the need for litigation. For the two months that followed the Parties engaged in informal resolution discussions through counsel that were ultimately unsuccessful. On September 20, 2022, Plaintiffs filed their class action complaint against UCO. (Dkt#1).

**B.  <u>Settlement Negotiations and the Proposed Settlement Agreement.</u>**

Following the Parties' initial scheduling conference on November 28, 2022, wherein the Court denied UCO's request to stay the case while the university engaged a Title IX consultant to conduct a review of the university's athletic department, the Parties resumed informal settlement discussions. Between January 10, 2023 and September 12, 2023, counsel continued those discussions.

On September 14, 2023, after an impasse in informal negotiations between counsel, the Parties engaged a neutral third-party mediator, Jason Marsili—an experienced mediator and civil rights litigator—to assist with continuing negotiations. The Parties engaged in multiple mediation sessions with Mr. Marsili and continued negotiations after formal mediation sessions before coming to the terms in the proposed Settlement Agreement. Overall, through counsel, the Parties have held periodic telephone discussions, exchanged numerous emails and proposals, and have had multiple virtual meetings. After discussions and negotiations that took place over the course of a year, the Parties reached an agreement to settle the litigation as described below.

The proposed Settlement Agreement resolves each claim asserted in this lawsuit. (Ex. A, Proposed Settlement Agreement). As part of the proposed Settlement Agreement, UCO agrees to hire an outside individual or organization to conduct a full Gender Equity Review of its athletic department using the process detailed in the U.S. Department of Education's Office for Civil

Rights' 1990 Title IX Investigator's Manual. *Id.* ¶ 9. UCO further agrees that it will use the findings of the Gender Equity Review to create a Gender Equity Plan that will ensure UCO's athletic department is in full compliance with Title IX's requirement to provide equal benefits, opportunities, and treatment to male and female student-athletes by the end of the 2026-27 academic year. *Id.* ¶ 15. The Settlement Agreement also requires that, by the beginning of the 2024-25 academic year UCO will provide the women's track and field teams with equal uniforms, equipment, and supplies; equal transportation and lodging; equal publicity; equal treatment regarding scheduling; team locker rooms that are not shared with other teams during the competition seasons; athletic training and/or medical staff at practices and competitions; and practice and competition venues on or near campus. *Id.* ¶¶ 21–24. To monitor compliance, the proposed Settlement Agreement provides that until June 30, 2028, UCO will provide detailed annual status reports regarding UCO's implementation of the Gender Equity Plan and UCO will post the detailed annual status reports on the university's main and athletics websites.

## C. <u>Costs and Attorneys' Fees</u>

The Proposed Settlement Agreement provides that UCO will pay reasonable costs and reasonable attorney fees incurred by Plaintiffs in this litigation in an amount to be determined by the Court. UCO has agreed it will not make a degree of success argument and agrees that the attorneys' fees to be paid will be Plaintiffs' counsel's reasonable hours multiplied by their hourly rates. The Plaintiffs agree to not make an enhancement argument. UCO agrees that Plaintiffs will have the right to seek and recover the reasonable costs and reasonable attorneys' fees they incur in the litigation of Plaintiffs' reasonable costs and reasonable attorneys' fees. *Id.* ¶ 26.

**D.  Proposed Notice to the Class**

The Parties have agreed to the proposed "**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT IN TITLE IX ATHLETICS LITIGATION AND NOTICE OF A FAIRNESS HEARING**" that will be sent by email to all female students who attended the University of Central Oklahoma from September 20, 2022 through present, and will be posted on the UCO's main website and athletic website to provide notice to potential future students, who participated, seek to participate, and/or are or were deterred from participating in intercollegiate athletics at UCO because they may not receive benefits, opportunities, or treatment equal to male student-athletes. (Ex B, Proposed Notice). The notice explains the nature of the controversy, the details of the Settlement Agreement, the right of class members to object to it and, if they submit a timely objection to the Court, to appear and be heard at the "Fairness Hearing" required by Federal Rule of Civil Procedure 23(e)(2).

**E.  Rule 23(e)(3) Statement**

Pursuant to Rule 23(e)(3), the Parties hereby notify the Court that, other than as stated in the proposed Settlement Agreement, there are no agreements requiring disclosure that were "made in connection with the proposal." *See* Fed. R. Civ. P. 23(e)(3).

**III.  CLASS DEFINITION AND CLASS NATURE OF THE CLAIMS.**

The Parties agree the class should be defined as:

> All female students at the University of Central Oklahoma from September 20, 2022, through June 30, 2028, who participate in intercollegiate athletics at the University of Central Oklahoma, seek to participate in intercollegiate athletics at the University of Central Oklahoma, and/or are deterred from participating in intercollegiate athletics at the University of Central Oklahoma because they might or may not receive athletic benefits, opportunities, or treatment equal to male student-athletes.

4

Certification of such classes in Title IX athletics cases is appropriate because the alleged discrimination itself is inherently class based and measured on a program-wide, rather than individual, basis. In injunctive relief cases, a single class action is appropriate to avoid the possibility of conflicting verdicts and orders. In addition, including all female student-athletes ensures that individual students will not be required to bring separate actions.

Courts have routinely recognized the class-based nature of Title IX claims and have certified classes including present, prospective, future, and deterred female students. *See Paton v. N.M. Highlands Univ.*, 275 F.3d 1274 (10th Cir. 2002) (class of "all present and future female students at [New Mexico Highlands University] who participate, seek to participate, or are deterred from participating in varsity intercollegiate athletics at [New Mexico Highlands University]); *Cohen v. Brown v. Univ.*, 991 F.2d 888, 893 (1st Cir. 1993) (class of "all present and future Brown University women students and potential students who participate, seek to participate, and/or are deterred from participating in intercollegiate athletics funded by Brown"); *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 335–36 (3d Cir. 1993) (class of "all present and future women students at I.U.P. who participate, seek to participate, or are deterred from participating in intercollegiate athletics at the University"); *Portz v. St. Cloud St. Univ.*, 297 F. Supp. 3d 929, 935 (D. Minn. 2018) ("All present, prospective, and future female students at St. Cloud State University who are harmed by and want to end [the University's] sex discrimination in: (1) the allocation of athletic participation opportunities; (2) the allocation of athletic financial assistance; and (3) the allocation of benefits provided to varsity athletes."); *Haffer v. Temple Univ.*, 678 F. Supp. 517, 521 (E.D. Pa. 1987) (class of "all current women students at Temple University who participate, or who are or have been deterred from participating because of sex discrimination in Temple's intercollegiate athletic program."); *see also Boucher v. Syracuse Univ.*, 164 F.3d 113 (2nd Cir. 1999); *Biediger v.*

*Quinnipiac Univ.*, 928 F. Supp. 2d 414 (D. Conn. 2013); *Foltz v. Del. St. Univ.*, 269 F.R.D. 419, 426 (D. Del. 2010); *Cmtys. for Equity v. Mich. High School Athletic Ass'n*, 192 F.RD. 568 (W.D. Mich. 1999); *Ridgeway v. Mont. High School Ass'n*, 633 F. Supp. 1564, 1567 (D. Mont. 1986), *aff'd* 858 F.2d 579 (9th Cir. 1988); *Bucha v. Ill. High School Ass'n*, 351 F. Supp. 69 (N.D. Ill. 1982); *Leffel v. Wis. Inter-scholastic Athletic Ass'n*, 444 F. Supp. 1117, 1119 (E.D. Wis. 1978).

## IV.   ARGUMENT.

When determining whether to certify a class, the court looks to Federal Rule of Civil Procedure 23, particularly subsections (a) and (b). Plaintiffs must satisfy all four of the requirements of Rule 23(a). Rule 23(b) discusses the types of class actions that can be brought. While there are three options available under Rule 23(b), plaintiffs must satisfy only one of them. *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974); *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1128 (10th Cir. 2013). The Parties agree the proposed class meets Rule 23's requirements for class certification.

By providing a single forum in which to litigate similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources of federal courts. *Naylor Farms, Inc. v. Chaparral Energy, LLC*, No. CIV-11-0634-HE, 2017 WL 187542, at *9 (W.D. Okla. Jan. 17, 2017) ("A class action would achieve greater economies of time, effort and expense, and promote enhanced uniformity of decisions as to persons similarly situated than would individual actions." (cleaned up)). A court's decision whether to certify a class should not be based on its view of the merits of plaintiffs' underlying claims. *Eisen*, 417 U.S. at 178. "Although 'the class determination generally involves considerations that are enmeshed in the factual and legal issues compromising the plaintiff's cause of action,' the court's responsibility is to 'carefully apply the requirements of Rule 23(a)." *Shook v. El Paso County*, 386 F.3d 963, 971 (10th Cir. 2004) (quoting *Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) "During the process, the

substantive allegations of the complaint are accepted as true; the merits of the plaintiffs' claims are not considered." *In re General Motors Corporation "Piston Slap" Products Liability Litigation*, No. MDL 04-1600, 2006 WL 1049259, at *7 (W.D. Okla. April 19, 2006); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013); *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1174 (10th Cir. 2023). The Court possesses "significant latitude in deciding whether or not to certify a class." *McKnight v. Linn Operating, Inc.,* No. CIV-10-30-R, 2016 WL 756541, at *3 (W.D. Okla. Feb. 25, 2016).

A.  <u>**The Proposed Class Satisfies the Requirements of Rule 23(a)(1)–(4).**</u>

Rule 23(a) provides that a proposed class must satisfy four requirements:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> 1.  the class is so numerous that joinder of all members is impracticable;
> 2.  there are questions of law or fact common to the class;
> 3.  the claims or defenses of the representative parties typical of the claims or defenses of the class; and
> 4.  the representative parties will fairly and adequately protect the interests of the class.

The Parties agree the proposed class readily satisfies these requirements.

1.  <u>The proposed class is numerous, and joinder of all class members is impracticable.</u>

Rule 23(a)(1)'s numerosity requirement is satisfied when the number or nature of class members makes their joinder as named plaintiffs impracticable. *Peterson v. Oklahoma City Housing Authority*, 545 F.2d 1270, 1273 (10th Cir. 1976). The Tenth Circuit has not adopted a specific number as presumptively sufficient to meet this burden, and there is "no set formula to determine if the class is so numerous that it should be so certified." *Trevizo v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006) (quotation omitted). Instead, several "factors are relevant in determining whether joinder is impracticable, including class size, the geographic diversity of class members, the relative ease or difficulty in identifying members of the class for joinder, the

financial resources of class members, and the ability of class members to institute individual lawsuits." *Cherokee Nation of Oklahoma v. United States*, 199 F.R.D. 357, 361 (E.D. Okla. 2001). Given that this is a fact-intensive inquiry, the district court is granted "wide latitude" to make an "appropriate judgement call." *Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014); *see also Fortelney v. Liberty Life Assurance Company of Boston*, No. CIV-09-12056-F, 2012 WL 13088605, at *16 (W.D. Okla. Sept. 27, 2012).

### a) Class Size.

The Parties agree that Plaintiffs are not required to provide an exact number of potential class members. Here, during the 2021-22 academic year alone, there were 174 female students-athletes at UCO. *See* Ex. C (UCO Roster Counts). In the same year, there were 5,399 female full-time undergraduate students, some of whom would likely fall into the potential class defined above. *See* UCO, *Enrollment Statics & Demographics*, Fall 2021 available at https://www.uco.edu/files/demobook-202210-fall-2021.pdf.  Thus, there are at least 174 students in the proposed class for one single academic year. All these individuals are members of the proposed class because all were allegedly affected by the sex discrimination charged in UCO's intercollegiate athletic program. There are simply too many females involved to add them all as individual plaintiffs.

### b) Prospective and Future Female Students.

The Parties agree that joinder of all class members in the present action is impracticable because the identities of many of the proposed class members are not and cannot currently be known. *See Colorado Cross Disability Coalition*, 765 F.3d at 1215  (noting that joinder of unknown future members "also weighs in favor of [class] certification"); *Skinner v. Uphoff*, 209 F.R.D. 484, 488 (D. Wyo. 2002) ("The Court also notes that numerosity is met where, as here, the

class includes individuals who will become members in the future. As members *in futuro*, they are necessarily unidentifiable, and therefore joinder is clearly impracticable.") (internal citations omitted).

While the names of the existing female athletes are known, the names of the prospective and future female students are not because they are now in high school or junior college or attending other institutions. These prospective students may number in the thousands. They are known to exist because UCO continues to fill its freshman and transfer classes, and to fill its women's athletic teams. But no one presently can know who will choose to enroll at UCO in the future. Courts routinely certify classes such as this one, which includes future and prospective members. Notably, myriad Title IX cases included prospective and future students. *See supra* pp. 5–6 (list of Title IX cases); *see also Weaver v. Regan*, 701 F. Supp. 717, 721 (W.D. Mo. 1988) (joinder of unknown persons or future class members who will be denied benefits in the future is impracticable, necessitating class certification); *Gomez v. Ill. State Bd. of Ed.*, 117 F.R.D. 394, 399 (N.D. Ill. 1987) (future students "are necessarily unidentifiable, and therefore, joinder is clearly impracticable").

Similarly, no one can know the names of all the prospective female students who are now considering or soon will consider applying to UCO. Joinder of these female students is similarly impracticable. *See Phillips v. Joint Legislative Comm. on Performance*, 637 F.2d 1014, 1024 (5th Cir. 1981) (class included persons deterred from applying because of defendant's discriminatory practices); *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975) (fact that class members exist, but are not specifically identifiable, supports rather than detracts from class certification); *Cmtys. for Equity*, 192 F.R.D. at 572 (same).

Joinder is also impracticable because of the inherently fluid nature of the proposed class. Its members have already changed during this litigation and will continue to do so as new female students enroll at UCO and others transfer or graduate. More than 25 percent of UCO's female intercollegiate athletes change each year simply because of the nature of academic programs and the four-year athletic eligibility limitations of the NCAA. *See Santiago v. City of Philadelphia*, 72 F.R.D. 619, 624 (E.D. Pa. 1976) (constant rotation of juveniles through youth study center made joinder impracticable in an action challenging the legality of the center's policies); *Atkins v. Toan*, 595 F. Supp. 104, 105 (W.D. Mo. 1984) (joinder impracticable when class membership is fluid); *Jane B. v. New York City Dept. of Soc. Servs.*, 117 F.R.D. 64, 70 (S.D. N.Y. 1987) (joinder made impracticable by the "fluid compositions" of the defendant juvenile centers).

        *c) Geographic dispersal.*

The Parties agree the class members are widely dispersed geographically. While UCO's current female athletes spend the school year in Oklahoma, they come from all parts of North America and the world. The prospective and future students now considering whether to enroll at UCO live throughout the world, as UCO draws its student body from nearly every state and from many foreign nations. It is not practicable for each such student to separately pursue her own action from afar.

**B.**   **Common questions of law and fact apply to the class.**

The Parties agree Rule 23(a)(2)'s commonality requirement is satisfied because the class claims share a common question of law or fact or remedial theory. *See McKnight*, 2016 WL 756541, at *4. The class must show that the members "have suffered the same injury . . . and the incidents of discrimination complained of . . . present a common issue that could be resolved efficiently in a single proceeding." *Tabor*, 703 F.3d at 1228. "A plaintiff need only demonstrate

10

that there is a single question of law or fact common to the entire class." *Fortelney*, 2012 WL 13088605, at *17. The Parties agree that commonality is a low hurdle that is surmounted here. Commonality is found when plaintiffs' claims depend "upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* (quoting *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349 (2001)).

In the instant case, the claims of all proposed class members include the same legal questions: whether UCO engaged in sex discrimination and violated Title IX through (1) the allocation of benefits, opportunities, and treatment to varsity athletes and (2) conduct that may prevent or chill other students from asserting rights under Title IX. As set forth above, these claims are inherently class-based because they require a program-wide comparison of how UCO treats its sex-segregated men's and women's teams and retaliatory conduct affects all female students by deterring cooperation or participation in Title IX litigation.

The factual questions are also common. For example, they include:

- Which athletic benefits (such as equipment, supplies, uniforms, coaching, facilities, travel, academic support, recruiting support, etc.) does UCO provide to male and female athletes?

- Whether UCO's conduct impeded the ability of female students to seek redress of alleged Title IX violations?

These are similar to the questions of law and fact that were found to be common to the plaintiffs in the Title IX class actions cited above. As the nature of Title IX claims necessarily depends on how all women are being treated versus how all men are being treated, the Parties agree that the proposed class satisfies the requirements of Rule 23(a)(2).

C.   **The class representatives' claims are typical of those of the class.**

Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). The requirement is usually met when the representative plaintiffs are subject to the same policies as the putative class members. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010). ("[T]ypicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances"). "[T]ypicality is intended to ensure that the class representatives will, by establishing their own claims, establish the bulk of the elements of each class member's claims." *McKnight*, 2016 WL 756541, at *5.

Here, the named Plaintiffs' claims are not just typical of the class claims; they are identical. They allege that they (1) have been denied or imminently will be denied an equal allocation of the benefits, opportunities, and treatment provided to varsity male student-athletes at UCO and (2) are or will be retaliated against for raising Title IX complaints. All class members would benefit from injunctive relief to address both claims. The Parties agree that Plaintiffs satisfy their burden of showing typicality.

D.   **The named Plaintiffs and their counsel are adequate representatives.**

Rule 23(a)'s fourth requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). This requires Plaintiffs to demonstrate both that (1) the named Plaintiffs do not have interests that are antagonistic to the class and (2) their attorneys are competent to handle the litigation. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188–89 (10th Cir. 2002).

1.   Class Representatives.

Two factors generally inform whether class representatives satisfy the Rule 23(a)(4) requirement: "(1) absence of conflict and (2) assurance of vigorous prosecution." *Amchem Prods.,*

12

*Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (holding that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members).

The Parties agree the named Plaintiffs will fairly, adequately, and vigorously represent the interests of the class. Plaintiffs do not have interests antagonistic to the interests of the members of the class. And they do not expect that any will arise.

2. <u>Class Counsel.</u>

The undersigned counsel have devoted substantial and sufficient efforts to investigating the facts and identifying the potential claims in this action, have detailed knowledge of the applicable law, and have sufficient resources to commit to representing this putative class. The Parties agree the undersigned counsel will adequately represent the class in this case.

Plaintiffs' attorney Arthur H. Bryant has been successfully litigating class action sex-discrimination cases for females against educational institutions since he tried and won the landmark case getting girls into Philadelphia's public, previously all-male Central High School in 1983. *Newberg v. Bd. of Public Educ.*, 26 Pa. D & C.3d 682 (Pa. C.P. 1983). He joined Public Justice (then called Trial Lawyers for Public Justice) in 1984 as its sole staff attorney, became its Executive Director in 1987, its Chairman in 2014, and its Chairman Emeritus in 2019, when he joined Bailey & Glasser, LLP. Bryant has been a leading Title IX litigator since 1985, when he served as lead trial counsel for the plaintiff class in *Haffer v. Temple University*, 678 F. Supp. 517 (E.D. Pa. 1988).

Plaintiffs' attorney Lori Bullock has represented plaintiffs in both class action litigation and Title IX cases before filing the present case. *See, e.g.*, *Eggers v. Wells Fargo*, 4:14-cv-394 (S.D. Iowa 2014); *Mayerova v. Eastern Mich. Univ.*, 2:18-cv-11909 (E.D. Mich. 2018); *Cohen v. Brown Univ.*, 92-CV-0197 (D.R.I. 2020) (representing class for amended settlement); *Niblock v. Univ. of Kentucky*, 5:19-cv-00394 (E.D. Ky. 2019) (class counsel for women seeking to add

13

participation opportunities under Title IX); *Balow v. Mich. St. Univ.*, 21-cv-00044 (W.D. Mich. 2021) (representing women in a Title IX participation case).

Plaintiffs' attorney Joshua I. Hammack has represented plaintiffs in both class action litigation and Title IX cases before filing the present case. In his ten-year legal career, which began after he clerked for a Circuit Judge on the U.S. Court of Appeals for the Ninth Circuit, he has briefed issues in a wide variety of civil cases—including Title IX matters—in both district and appellate courts across the country. He has argued numerous motions before federal district courts and multiple appeals in the circuit courts as well. He has also briefed issues to the Supreme Court of the United States. He represented female student-athletes in *Balow v. Mich. St. Univ.*, 21-cv-00044 (W.D. Mich. 2021), and currently represents several other female student-athletes bringing Title IX cases against their schools.

Plaintiffs' counsel also includes additional individuals at Bailey & Glasser, LLP, and Frasier, Frasier & Hickman, LLP, but they need not be discussed here for purposes of this motion. Counsel for the Plaintiffs and the law firm of Bailey & Glasser, LLP, have represented hundreds of plaintiffs in Title IX and other discrimination cases, including class actions seeking equitable relief for all class members.

### E.    The Proposed Class Satisfies Rule 23(b)(2).

This action falls squarely under Rule 23(b)(2), which authorizes class action certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

A Rule 23(b)(2) "class action is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir. 2011) (citing Fed. R. Civ. P. 23(b)(2), advisory committee

note (1966)); 7A Wright & Miller §1776 ("[S]ubdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that civil rights suits for injunctive or declaratory relief can be brought as class actions."). The Rule's advisory committee notes that the rule is satisfied "even if the action or inaction has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2), advisory committee note (1966). Thus, even if only the named plaintiffs or even if only some of UCO's female athletes were subjected to UCO's sex discrimination, this action would satisfy the requirements of Rule 23(b)(2) because UCO's policies and actions are generally applicable to all members of the prospective class.

Here, Plaintiffs seek injunctive relief affecting the athletic department as a whole. In their "Prayer for Relief," Plaintiffs request that the Court:

> C.    Issue permanent injunctions barring UCO from discriminating against its female student-athletes on the basis of their sex by (a) denying them equal treatment and benefits in UCO's varsity intercollegiate athletics program and (b) retaliating against them for speaking about and challenging UCO's sex discrimination in violation of Title IX;

(Dkt#1 at p. 37).

This relief applies in common to all members of the proposed class. Plaintiffs' claims are particularly tailored to injunctive relief. The (b)(2) class "serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment." *Baby Neal v. Casey*, 43 F.3d 48, 58-59 (3d Cir. 1994). Indeed, Rule 23(b)(2) was "designed for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often ascertainable or amorphous class of persons." *Barnes v. The American Tobacco Company*, 161 F.3d 127 (3d Cir. 1998) (*citing* Conte, *1 Newberg on Class Actions* 3d 4.11); *see also Walters v. Reno*, 145 F.3d

1032, 1047 (9th Cir. 1998) ("As the Advisory Committee Notes explain, 23(b)(2) was adopted in order to permit the prosecution of civil rights actions.").

To eradicate such discrimination and to implement the broad remedial purposes of civil rights statutes, courts liberally apply all Rule 23's requirements to such cases. *Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330, 1333 (9th Cir. 1977) (court reversed district court's denial of class certification because it failed to consider broad remedial purposes of Title VII); *see also Cannon v. University of Chicago*, 441 U.S. 677, 706 (1979) (discussing broad remedial purpose of Title IX).

Because all requirements have been met, the Parties agree the proposed class is properly certifiable under Rule 23(b)(2).

## V.      ENTRY OF AN ORDER APPROVING THE PARTIES' CLASS SETTLEMENT IS NECESSARY AND APPROPRIATE.

Courts favor settlement as a method for resolving complex class litigation. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"). Under Federal Rule of Civil Procedure 23(e), court approval is necessary if this class action is to be fully and finally resolved on the basis of the Parties' proposed Settlement Agreement. "The Court has broad discretion in deciding whether to grant approval of a class action settlement." *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *10 (N.D. Okla. Dec. 2, 2011).

Review and approval of a class action settlement involves three steps. First, the court preliminarily approves the proposed settlement. Fed. R. Civ. P. 23(e)(2). Second, members of the class who would be bound by the proposed settlement must be given "notice in a reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). Finally, the court holds a hearing to determine whether the

proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C); *see also In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021). "Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is ... probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Harris v. Chevron U.S.A., Inc.*, No. CIV-15-0094-PRW, 2019 WL 5846917, at *2 (W.D. Okla. July 29, 2019) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)). "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Id.* at *2.

The Parties submit that the requirements for preliminary approval are satisfied; they ask the Court to approve the Parties' proposed form and method of notice of the class action settlement. They also request the Court schedule a final fairness hearing.

### A.   <u>The Settlement Agreement is Fair, Reasonable and Adequate.</u>

"In making the determination whether to approve a class action settlement, the Court should 'not decide the merits of the case or resolve unsettled legal questions.'" *Childs*, 2011 WL 6016486, at *10 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). "This is because the essence of settlement is compromise, and settlements are generally favored." *Id.*

> The Tenth Circuit has outlined four non-exclusive factors to be considered in determining whether a proposed settlement of a class action is fair, reasonable, and adequate. They are as follows:
>
> 1. whether the proposed settlement was fairly and honestly negotiated;
>
> 2. whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> 3. whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

4. the judgment of the parties that the settlement is fair and reasonable.

*Id.* at *11 (citation omitted). Here, the proposed Settlement Agreement is well within the aforementioned guidelines. Plaintiffs assert that UCO has violated Title IX with respect to its athletic department. Conversely, UCO disputes that Plaintiffs pled viable claims for relief. Thus, the Parties are using settlement to resolve legitimate factual and legal disputes.

1. The Settlement Agreement was Fairly and Honestly Negotiated.

The Settlement Agreement is the product of months of careful negotiations to ensure that the resolution benefits the entire class. Prior to reaching the Settlement Agreement the Parties are presenting for preliminary approval, Plaintiffs' counsel conducted a thorough investigation, including an onsite visit to the athletic facilities at issue, talking to numerous witnesses, conducting depositions, consulting with experts, and reviewing the substantial data produced in discovery. The Settlement Agreement is the product of arm's-length negotiations between Plaintiffs and Defendants and their experienced counsel at a point when Plaintiffs and Defendants possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and difficulties of their respective cases.

Further, as discussed above, the Settlement Agreement was reached through mediation: "The completeness and intensity of the mediation process, coupled with the quality and reputations of the Mediators, demonstrate a commitment by the Parties to a reasoned process for conflict resolution that took into account the strengths and weaknesses of their respective cases and the inherent vagaries of litigation." *Wilkerson v. Martin Marietta Corp.*, 17 F.R.D. 273, 285 (D. Colo. 1997). "Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion, and should therefore be approved." *Harris*, 2019 WL 5846917, at *3.

18

The Settlement Agreement reached in this case is the product of mutual, zealous advocacy, taking into account the relative strength and difficulties of each side's case. The Parties' proposed Settlement Agreement avoids the type of "all or nothing" outcome that continued litigation could impose. Considering the asserted claims and defenses of the Parties and the risks and delays of litigation,[1] the Settlement Agreement clearly falls within the range of reasonableness contemplated by Rule 23(e). This factor supports preliminary approval.

2. <u>Serious Questions of Law and Fact.</u>

The presence of serious questions of law and fact "tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV07-933-M, 2008 U.S. Dist. LEXIS 86741, at *31-41 (W.D. Okla. Oct. 27, 2008). "Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (internal quotations omitted). As strongly as both sides feel about the merits of their stance, each side here recognizes serious questions of law and fact exist in this case.

Though the Parties were able to ultimately agree to a settlement, they still disagree on numerous factual and legal issues. UCO continues to deny its athletic department is failing to provide the equal benefits, opportunities, and treatment to its female student-athletes required by Title IX. Further, Plaintiffs are optimistic about their chances of success at trial but recognize there

---

[1] If the settlement is rejected and Plaintiffs' claims are litigated, it could be years before the lawsuit is resolved. Purely by the nature of post-secondary education, many women would graduate and be deprived of the injunctive relief afforded by this settlement, which they should be allowed to benefit from instead.

are a number of significant obstacles they would still have to overcome to achieve success on behalf of the class. Put simply, serious questions of law and fact are still in dispute. Importantly, the meaningful Settlement Agreement renders the resolution of these questions unnecessary and provides a guaranteed recovery in the face of uncertainty.

      3.   <u>The Value of Immediate Recovery Outweighs the Possibility of Future Relief after Long and Expensive Litigation.</u>

The complexity, uncertainty, expense, and likely duration of further litigation and appeals also support approval of the proposed Settlement Agreement. As prior Title IX athletics litigation shows, there is a strong likelihood that, without settlement, the Parties will face years of protracted litigation both in this Court and the appellate courts. Further, given that, each year, class members matriculate out of college, immediate recovery permits more class members to benefit from the steps UCO will take to provide equal benefits, opportunities, and treatment to its female student-athletes. Plaintiffs' counsel has significant experience in Title IX athletics litigation and utilized their combined experience in this area to prepare this matter to be resolved in a manner that benefits the entire class. Lastly, if Plaintiffs were successful at trial, the remedy would be substantially similar to the relief obtained through the Settlement Agreement, as defendants in Title IX cases are afforded considerable discretion in deciding how to bring their programs into compliance with Title IX. *See, e.g.*, *Kelley v. Bd. of Trustees*, 35 F.3d 265, 272 (7th Cir. 1994) (discussing the discretion of schools about how to equalize athletic benefits); *Cohen*, 991 F.2d at 906–07 (same). Therefore, the value of the present Agreement, which also provides UCO some discretion according to its terms, still outweighs the benefits of possible future relief after long and expensive litigation.

4. <u>Plaintiffs, Defendants, and Their Counsel Believe the Proposed Settlement Agreement is Fair, Reasonable, and Adequate.</u>

Finally, Plaintiffs, Defendants, and their counsel agree the Settlement Agreement is fair, reasonable, and adequate. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Childs*, 2011 WL 6016486, at *14. Here, Plaintiffs' counsel—attorneys with considerable experience in Title IX class actions—only agreed to settle this action after a thorough investigation, written discovery, data analyses, and significant arm's-length negotiations. Additionally, as noted above, Plaintiffs and Plaintiffs' counsel have compared the substantial recovery the class will receive from the resolution of the litigation against the risks, delays, and uncertainties of continued litigation and appeals. Plaintiffs were involved in and stayed apprised of the litigation and contributed to settlement negotiations. Plaintiffs and Plaintiffs' counsel believe the Settlement Agreement is fair, adequate, and reasonable and should be approved. UCO likewise believes the Settlement Agreement should be approved. As such, the fourth factor—that counsel believe the settlement is fair, adequate, and reasonable—supports preliminary approval.

Because all four factors weigh in favor of the Settlement Agreement here, the Parties respectfully request the Court grant preliminary approval of the Settlement Agreement.

B. **The Court Should Approve the Parties' Proposed Form and Method of Notice of Hearing Regarding the Proposed Class Action Settlement.**

Once a court makes a preliminary determination that a proposed settlement is fair, reasonable, and adequate, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Generally, the Court must direct to class members the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Childs*, 2011 WL 6016486, at *14. When reviewing the content of the notice, Courts approve notice when the "notice is drafted in plain, easily understood language, and clearly and concisely

21

describes the nature of the action, contains the class definition, and sets forth the class claims and issues." *Id.*

The Parties in this case agree on both the content and the method of notice. The Parties took special care to ensure the notice was drafted in such a way that the target audience—college and high school age students—could easily understand the nature of the claims and relief afforded by the Settlement Agreement. The proposed Class Notice explains in plain, easily understood language the nature of the controversy, the details of the Settlement Agreement, the eligibility of class members to participate in the settlement and their right to object to it.

The Parties have agreed to the proposed "**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT IN TITLE IX ATHLETICS LITIGATION AND NOTICE OF A FAIRNESS HEARING**" attached as Ex. B that will be sent by email to the UCO email address accounts that UCO has assigned to all female undergraduate students currently enrolled at UCO, and to the email address account that UCO has on file for all admitted or prospective female undergraduate students. A link to the notice will also be posted on the University's website (on the university's admissions page, athletics page, and Title IX page) and the website of Bailey & Glasser, LLP, until the Fairness Hearing. The notice explains the nature of the controversy, the settlement terms, the right of class members to object to the proposed settlement and, if they submit a timely objection to the Court, to appear and be heard at the "Fairness Hearing" required by Federal Rule of Civil Procedure 23(e)(2). Such notice comports with the requirement to provide "notice in a reasonable manner to all class members," Fed. R. Civ. P. 23(e)(1)(B), (h)(1);  and is the most practicable method of notice under the circumstances, particularly given that class members are likely to have consistent access to email and the referenced UCO webpages, but not necessarily their physical mailing addresses, their campus mail (as students often go home for

school breaks and change physical addresses frequently), or print publications. *See* 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(c)(2) (noting that "technological change since 1974 has introduced other means of communication [besides first class mail] that may sometimes provide a reliable additional or alternative method for giving notice," and that "courts and counsel have begun to employ new technology to make notice more effective").

Finally, the Parties respectfully propose that, upon the Court's issuance of an order granting the Parties' Joint Motion for Preliminary Approval of Proposed Settlement ("Preliminary Approval"), the Court set the following schedule for issuance of the class notice, objections to the settlement, submitting papers in connection with final approval, and the fairness hearing:

| | |
|---|---|
| 5 days after Preliminary Approval: | Parties complete issuance of notice to class members via email and web posting; |
| 60 days after Preliminary Approval: | Deadline for submission of any objections from class members; |
| 10 days before the fairness hearing: | Parties file their joint motion for final approval of the settlement and respond to any objections; and |
| at least 75 days after Preliminary Approval: | Court to hold fairness hearing, permitting virtual appearances by any potential class members |

## VI.   <u>CONCLUSION.</u>

**WHEREFORE**, based on the foregoing, the Parties move this Court for entry of an Order:

1. Certifying this case as a class action for settlement purposes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of a class defined as follows:

> All female students at the University of Central Oklahoma from September 20, 2022, through June 30, 2028, who participate in intercollegiate athletics at the University of Central Oklahoma, seek to participate in intercollegiate athletics at the University of Central Oklahoma, and/or are deterred from

participating in intercollegiate athletics at the University of Central Oklahoma because they might or may not receive athletic benefits, opportunities, or treatment equal to male student-athletes.

    a.   Appointing the named Plaintiffs as representatives of the class;

    b.   Appointing Plaintiffs' counsel as class counsel, pursuant to Federal Rule of Civil Procedure 23(g);

2.   Preliminarily approving the proposed Settlement Agreement;

3.   Approving the proposed Class Notice; and

4.   Setting a date for a "Fairness Hearing" pursuant to Rule 23(e)(2).

Dated: February 16, 2024

Respectfully Submitted,

*Counsel for Tatum Robertson, et al., Plaintiffs*

*/s/ Lori A. Bullock*
BAILEY & GLASSER, LLP
Lori Bullock
309 E. 5th Street, Suite 202B
Des Moines, IA 50309
Tel: 515.416.9051
E-mail: lbullock@baileyglasser.com

Arthur H. Bryant
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel: (510) 272-8000
E-mail: abryant@baileyglasser.com

Joshua I. Hammack
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
E-mail: jhammack@baileyglasser.com

FRASIER, FRASIER & HICKMAN, LLP
Frank W Frasier
Maureen M. Johnson
1700 Southwest Blvd.
Tulsa, OK 74107
Phone: (918) 584-4724
E-mail: ffrasier@frasierlaw.com
E-mail: mjohnson@frasierlaw.com

*Counsel for Univ. of Central Ok, et al., Defendants*

*/s/ Dixie Coffey*
Dixie Coffey, Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
PHONE: 405-521-3921
E-mail: dixie.coffey@oag.ok.gov