## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TATUM ROBERTSON and EVE BRENNAN, individually and on behalf of all those similarly situated, <br><br>      Plaintiffs, <br><br> v. <br><br> UNIVERSITY OF CENTRAL OKLAHOMA and BOARD OF REGENTS FOR THE REGIONAL UNIVERSITY OF OKLAHOMA, <br><br> Defendants. | Case No. 22-cv-836-HE |

### [PROPOSED] CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement") is entered into, subject to the Court's approval, between Tatum Robertson and Eve Brennan ("Plaintiffs"), individually and on behalf of the class they represent, and Defendants University of Central Oklahoma ("UCO") and the Board of Regents for the Regional University of Oklahoma (collectively "State"). Plaintiffs and State are collectively referred to in this Agreement as the "Parties." This Agreement resolves the claims stated in the Complaint filed on September 20, 2022.

### Background

1.      On September 20, 2022, Plaintiffs filed the instant case against State alleging discrimination against female varsity student-athletes at UCO on the basis of their sex in violation of Title IX of the Education Amendments of 1972 ("Title IX"). (Dkt#1).

2.      Specifically, Plaintiffs allege that State is depriving female student-athletes at UCO of treatment and benefits equal to those provided to male varsity student-athletes and retaliating against female varsity student-athletes for complaining about sex discrimination and trying to enforce their rights under Title IX. (Dkt#1). State denies these allegations.

1

**Exhibit A, Pg. 1 of 14**

3.      On **[DATE]**, the Parties filed a Joint Motion seeking class certification **(Dkt#__)**. On **[DATE]**, the Court granted the motion and certified a class pursuant to Federal Rule of Civil Procedure 23(b)(2) defined as:

> All female students at the University of Central Oklahoma from September 20, 2022, through June 30, 2028, who participate in intercollegiate athletics at the University of Central Oklahoma, seek to participate in intercollegiate athletics at the University of Central Oklahoma, and/or are deterred from participating in intercollegiate athletics at the University of Central Oklahoma because they might or may not receive athletic benefits, opportunities, or treatment equal to male student-athletes.

4.      The Parties have engaged in discussions facilitated by a neutral third-party in an attempt to reach a mutually agreeable resolution of the litigation. As a result of those discussions, in lieu of continuing the present litigation, the Parties have agreed to settle all claims pursuant to the terms set forth in this Agreement. The Parties make the promises and representations contained herein for good and valuable consideration, the adequacy of which they hereby acknowledge.

## TERMS

5.      State acknowledges its obligation under the law to comply with Title IX in the operations of UCO's intercollegiate athletic program. Plaintiffs agree that the obligations assumed by the State in this Agreement satisfy Plaintiffs' claims and that Plaintiffs will not seek further relief against State for depriving female student-athletes at UCO of treatment and benefits equal to those provided to male varsity student-athletes or retaliating against female varsity student-athletes for complaining about sex discrimination regarding athletic treatment and benefits or trying to enforce their rights under Title IX, except as necessary to enforce this Agreement or as specifically permitted by this Agreement.

**Exhibit A, Pg. 2 of 14**

### A.  Title IX Gender Equity Review

6.      State agrees to hire Gabriel Feldman, Tulane University's Associate Provost for NCAA Compliance, ("Title IX Reviewer"), no later than 10 days after the court's approval of this Agreement, to conduct a Title IX Gender Equity Review to compare the availability, quality and kinds of benefits, opportunities, and treatment afforded members of UCO's male and female varsity sports programs (the "Gender Equity Review" or "Review").

7.      If Mr. Feldman is unavailable to conduct the Gender Equity Review within the time frame set forth by this Agreement, the Parties agree to either (a) adjust the timing of the Gender Equity Review such that Mr. Feldman is available to conduct and complete the Review or (b) mutually agree on another appropriate outside individual or organization to conduct the Gender Equity Review within the time frame set forth by this Agreement.

8.      The Parties agree that the scope of the Gender Equity Review shall be set forth by the factors described in Section VII.B of A Policy Interpretation; Title IX and Intercollegiate Athletics. These administrative regulations were issued by the U.S. Department of Education and became effective on December 11, 1979, available at https://www2.ed.gov/about/offices/list/ocr/docs/t9interp.html.

9.      Mr. Feldman or the person or organization conducting the Gender Equity Review will conduct the review in accordance with the process and procedures adopted by the Office for Civil Rights of the U.S. Department of Education in the Title IX Athletics Investigator's Manual adopted in 1990 and available at https://files.eric.ed.gov/fulltext/ED400763.pdf.

10.      During the Review, Mr. Feldman or the person or organization conducting the Gender Equity Review (the "Title IX Reviewer") will meet with the named Plaintiffs, UCO's female and male student-athletes, and UCO's coaches and alumni. The meetings with students,

3

alumni, and coaches will occur without UCO athletic or university administration present. The Title IX Reviewer will also meet with UCO administration and any other individuals at UCO that have knowledge relevant to the Review. As part of the Review process, State shall be afforded the opportunity to provide information, comment upon, and/or respond to any findings made during the Review process.

11.     Mr. Feldman or the person or organization conducting the Gender Equity Review will complete the Review no later than 135 days after commencement of the Review and issue a written report of their findings—with the understanding that Title IX does not require identical benefits, opportunities, or treatment, provided that the overall effect of any differences is negligible.

**B. Title IX Gender Equity Plan**

12.     State will use the written report and work with Mr. Feldman, or the person or organization conducting the Gender Equity Review to develop a Gender Equity Plan within a reasonable time that will address the findings of the Title IX Gender Equity Review with respect to the availability, quality, and kinds of benefits, opportunities, and treatment between men's and women's varsity sports programs that are not negligible or justified by nondiscriminatory factors.

13.     Once it is fully implemented, the Gender Equity Plan will bring UCO into full compliance with Title IX's requirements to provide equal treatment and benefits to male and female student-athletes.

14.     Prior to State formally adopting the Gender Equity Plan, Mr. Feldman or the person or organization conducting the Gender Equity Review must approve of the Gender Equity Plan and be satisfied that, once State has implemented it, UCO's intercollegiate varsity athletic program will be in full compliance with Title IX by the start of the 2027-28 academic year and will remain

**Exhibit A, Pg. 4 of 14**

in compliance for future years. Such approval of the Gender Equity Plan will not be unreasonably withheld.

15.     State will adopt the Gender Equity Plan within 90 days of approval by the Title IX Reviewer and will complete implementation of the Gender Equity Plan by the end of the 2026-27 academic year, including any agreed-upon modification or construction of athletic facilities.

16.     When creating and implementing the Gender Equity Plan, State may refuse to construct new track and field facilities, reduce roster sizes, or eliminate any existing sports. However, any action State refuses to take may require State to undertake alternative actions in order to achieve full compliance with Title IX. Should State refuse to take any actions identified above, State shall undertake any and all alternative actions necessary to achieve full compliance with Title IX.

17.     Pursuant to the terms of this Agreement as specified subsequently herein, during the term of this Agreement, the Parties agree to exchange information and confer regarding progress toward achieving Title IX compliance and the possibility of adjustments to specific steps stated below to maintain progress towards achieving Title IX compliance.

18.     State agrees that on June 30, 2025; June 30, 2026; June 30, 2027; and June 30, 2028; it will provide Plaintiffs and Plaintiffs' counsel with a detailed annual status report regarding UCO's implementation of the Gender Equity Plan, which will include the following information from the preceding academic year:

    a.   UCO's full-time undergraduate enrollment rates and numbers for males and females;

    b.   UCO's Title IX intercollegiate athletic participation numbers, total and by team, for males and females;

5

**Exhibit A, Pg. 5 of 14**

c.    UCO's Title IX athletic financial aid numbers for males and females; and

d.    a list of any differences in benefits, opportunities, and treatment being provided to UCO's men's and women's varsity student-athletes (except for differences stemming from sport-specific needs that are met equivalently in UCO's men's and women's programs as recognized by the Gender Equity Review), along with UCO's explanations for them and/or plans to address them.

19.    To permit all class members to monitor progress towards and compliance with this Agreement, State will make this detailed annual status report publicly available on UCO's main website and UCO's athletic department website.

20.    While UCO will continue to comply with Title IX in its intercollegiate athletic program after June 30, 2028, State will have no further obligation to provide status reports under this Agreement after June 30, 2028.

## C.  Specific Relief for Women's Track and Field and Cross Country Team Members

21.    The Parties acknowledge and agree that, beginning in the 2024-25 academic year, the women's cross country, indoor track and field, and outdoor track and field teams will be provided with equal benefits and treatment, as compared to UCO's male student-athletes, in the following areas:

a.    Uniforms, equipment, and supplies (for practice and competition);

b.    Transportation and lodging;

c.    Publicity; and

d.    Clearly established and reliable schedules for all practices, weight training, and any other necessary athletic related activities.

**Exhibit A, Pg. 6 of 14**

22.     By June 30, 2024, State will provide to Plaintiffs and Plaintiffs' counsel a detailed list of UCO's actions, and the supporting documentation, demonstrating UCO is providing equal treatment, opportunities, and benefits in the areas listed in paragraph 21 for the women's cross country, indoor track and field, and outdoor track and field teams.

23.     State will make this detailed list of actions it took to comply with paragraph 21 (without the supporting documentation) publicly available on UCO's main website and UCO's athletic department website.

24.     Additionally, State will provide its women's indoor track and field, outdoor track and field, and cross country student-athletes with the following:

a.      By or in the 2024-2025 academic year, the teams will have their own locker room on campus (not shared with other teams' members during the women's cross country, indoor track and field, and outdoor track and field teams' seasons) comparable to those provided to UCO's male student-athletes.

b.      Practice facilities and equipment on or within ten miles of campus that are appropriate for NCAA Division II teams, equivalent in quality to the facilities and equipment used by UCO's men's varsity teams, can be used for practice together by all team members, and to which the teams will have exclusive access during practice.

c.      Availability of athletic trainers and/or medical staff either employed or contracted by UCO or employed or contracted by the event/meet host institution at each practice or competition.

d.      By or in the 2024-25 academic year, the women's cross country team will have a competitive facility on or within ten miles of the UCO campus that meets the

**Exhibit A, Pg. 7 of 14**

requirements for NCAA Division II cross country competitions and to which the competing teams and their spectators will have exclusive access to during competitions.

e.      By or in the 2024-25 academic year, UCO will identify competitive facilities on or within fifty-five miles of the UCO campus that meet the requirements for NCAA Division II indoor track and field and outdoor track and field team competitions. UCO will take the steps necessary to schedule at least one competition at those identified facilities as a "home competition" for each team each year. If it is not possible to schedule a competition at such a facility for the 2024-25 academic year due to scheduling conflicts at the identified facilities or due to competitions UCO has already committed to attend, UCO will schedule at least one competition at those facilities as a "home competition" for each team each year starting in the 2025-26 academic year. The competing teams and their spectators will have exclusive access to the facilities during the competitions.

**D.   Retaliation**

25.      State agrees to not retaliate against Plaintiffs or any of the class members for complaining about sex discrimination, trying to enforce Title IX, or trying to ensure compliance with this Agreement; provided that State shall have the right to respond in full to any court filings and such responses shall not be deemed a violation of this provision.

**E.   Reasonable Costs and Reasonable Attorneys' Fees**

26.      The State agrees to pay the reasonable costs and reasonable attorneys' fees Plaintiffs incurred pursuing this litigation to Bailey & Glasser, LLP, in an amount to be determined by the Court after final approval of this agreement.

**Exhibit A, Pg. 8 of 14**

a.   State agrees it will not make a "degree of success" argument and agrees that the attorneys' fees to be paid will be Plaintiffs' counsel's reasonable hours multiplied by their hourly rates.

b.   Plaintiffs agree they will not make an enhancement argument.

c.   Plaintiffs will have the right to seek and recover the reasonable costs and reasonable attorneys' fees they incur in the litigation of Plaintiffs' reasonable costs and reasonable attorneys' fees.

d.   The Parties agree that they will not communicate to the Court the amount of costs and attorneys' fees proposed by the Mediator during settlement negotiations.

27.   The Parties agree that State will pay Bailey & Glasser, LLP, the amount of reasonable costs and reasonable attorneys' fees as determined by the Court no more than 45 days after the Court determines the amount.

**F.     Class Notice**

28.   Pursuant to Federal Rule of Civil Procedure 23(e), the Parties agree that notice of this proposed Agreement should be provided to all members of the class in a form approved by the Court. The Parties propose that the Court approve the form of notice set forth in **Exhibit A**.

29.   Upon the Court's approval of the form of notice, State shall timely transmit the notice by electronic mail, publication on UCO's and UCO's athletic department's website, and any other reasonable means the Court may direct to all current female UCO students and all recruited UCO female student-athletes.

30.   State shall be responsible for all costs of providing the notice.

31.   Upon the Court's final approval of this Agreement, State shall provide notice of such approval and of the availability of copies of this Agreement by electronic mail, publication

on UCO's and UCO's athletic department's website, and any other reasonable means the Court may direct to all current female UCO students and all recruited female UCO student-athletes. In addition, State shall provide such notice to all personnel in UCO's athletic department and any other individuals State expects to participate in the implementation of this Agreement.

### G.      General Provisions

32.      This Agreement shall remain in effect through July 31, 2028.

33.      This Agreement embodies a compromise that is intended to resolve the pending litigation between the Parties. Neither Plaintiffs nor State intend that this Agreement shall have precedential effect with respect to the Parties' legal positions regarding the requirements of Title IX or with respect to their rights or obligations after the termination of the Agreement. Nothing in this Agreement is intended or shall be construed to limit Plaintiffs' or the class members' rights to challenge State's or UCO's compliance with Title IX for alleged unequal athletic treatment and benefits that accrue after the termination of this Agreement.

34.      Plaintiffs, on behalf of the class, agree that, during the term of this Agreement, they will not challenge State's or UCO's compliance with Title IX in regard to the allocation of varsity athletic participation opportunities to female and male student-athletes or the relative treatment and benefits provided to female and male student-athletes, except as necessary to enforce this Agreement or as specifically permitted by this Agreement.

35.      Plaintiffs agree to dismiss Count II of their Complaint (Title IX Retaliation) with prejudice following the Court's final approval of this Agreement. The Parties agree that any Court oversight of UCO's implementation of the Gender Equity Plan only applies to Count I (Unequal Treatment and Benefits) of Plaintiffs' Complaint.

36.     The terms of this Agreement have been negotiated by the Parties through a neutral third-party mediator with the assistance of their respective legal counsel. By the execution hereof, the Parties expressly warrant that they have read this Agreement, understand its terms, have had the opportunity to confer with legal counsel regarding its contents, and are signing this Agreement of their own free will and act.

37.     This Agreement shall be attached to the Court's Order approving this Agreement. The Court will retain jurisdiction over this action for the purpose of enforcing the terms of this Agreement. The case will be closed and dismissed upon termination of the Agreement.

38.     If the Court declines to approve this Agreement, then the Parties will return to their positions with respect to this litigation as if they had never executed this Agreement.

39.     This Agreement may be executed in counterparts by original, facsimile, or electronic signature. The Agreement will be deemed fully executed when all Parties and their counsel have returned their executed signature pages to Plaintiffs' counsel.

40.     In the event that this Agreement or any provision hereof is construed or determined to be ambiguous by any court of competent jurisdiction, the Parties agree that each Party, through its attorneys, has contributed to the preparation of this Agreement and that the Parties have jointly written or composed the clauses contained herein, and that no Party shall be given any advantage over the other Party under the laws of construction of instruments based upon the authorship of this Agreement.

41.     It is still further understood and agreed that, if any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, that provision shall be severed, and the remaining provisions shall nevertheless survive and continue in full force and effect without being impaired or invalidated in any way.

11

**Exhibit A, Pg. 11 of 14**

42.     This Agreement embodies the entire agreement between the Parties and supersedes any and all prior agreements, arrangements, or understandings between the Parties relating to this subject matter. This Agreement may not be modified except by order of the Court or in a writing signed by all Parties and approved by the Court.

43.     The Parties agree to cooperate fully to execute any and all supplementary documents and take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

**Exhibit A, Pg. 12 of 14**

Dated: February___, 2024

*Counsel for Tatum Robertson, et al.,*
*Plaintiffs*

_____

BAILEY & GLASSER, LLP
Arthur H. Bryant
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel.: (510) 272-8000
E-mail: abryant@baileyglasser.com

Lori Bullock
309 E. 5th Street, Suite 202B
Des Moines, IA 50309
Tel.: 515.416.9051
E-mail: lbullock@baileyglasser.com

Joshua I. Hammack
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
E-mail: jhammack@baileyglasser.com

FRASIER, FRASIER & HICKMAN, LLP
Frank W Frasier
Maureen M. Johnson
1700 Southwest Blvd.
Tulsa, OK 74107
Phone: (918) 584-4724
E-mail: ffrasier@frasierlaw.com
E-mail: mjohnson@frasierlaw.com

**Plaintiffs**

_____          Date:_____
TATUM ROBERTSON

_____          Date:_____
EVE BRENNAN

13

**Exhibit A, Pg. 13 of 14**

Dated: February____, 2024                    *Counsel for Univ. of Central Ok, et al.,*
                                             *Defendants*

 

 

_____
Dixie Coffey, Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
PHONE: 405-521-3921
E-mail: dixie.coffey@oag.ok.gov

 

Derek T. Teeter
Hayley E. Hanson
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Phone: 816-983-8331
E-mail: derek.teeter@huschblackwell.com
E-mail: hayley.hanson@huschblackwell.com

**Defendants**

 

 

_____          Date:_____
Signature

PRINTED NAME, President
University of Central Oklahoma
On Behalf of Board of Regents for the Regional University of Oklahoma

14

**Exhibit A, Pg. 14 of 14**